HELEN B. FEENEY *vs.* COMMONWEALTH & another.

Suffolk.    March 9, 1977. — September 16, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Attorney General.    Constitutional Law,* Executive and administrative departments of the Commonwealth.

The Massachusetts Attorney General is acting within his authority under Massachusetts law in prosecuting an appeal to the United States Supreme Court from a judgment of the United States District Court, District of Massachusetts, against State officers whom he represented in the District Court proceedings, notwithstanding the officers' lack of consent and over their expressed objections to the appeal. [363-368]

QUESTION OF LAW certified to the Supreme Judicial Court by the Supreme Court of the United States.

*Thomas R. Kiley,* Assistant Attorney General (*Francis X. Bellotti,* Attorney General, with him) for the Commonwealth & another.

*Richard P. Ward* for Helen B. Feeney.

*Daniel A. Taylor,* Chief Legal Counsel to the Governor, *Benjamin Jones,* Assistant Legal Counsel to the Governor, *& Patrick J. Sharkey,* for the Governor & another, amici curiae, submitted a brief.

LIACOS, J.   We have been presented with a question certified to us by the Supreme Court of the United States[1] pursuant to S.J.C. Rule 3:21, as amended, 366 Mass. 871 (1974). The question pertains to the authority of the Attorney General to prosecute an appeal to the Supreme Court from a judgment of the United States District Court, District of Massachusetts, contrary to the expressed objections of State officers whom he represented in the District Court proceedings.

The action which generated the question now before us was commenced by Helen B. Feeney under 42 U.S.C. § 1983 (1970) after she was refused certification for two civil service positions. Although Mrs. Feeney received high scores on civil service examinations given in connection with the selection procedure for both positions, she was not certified for either position as a result of the operation of the Massachusetts veterans' preference statute, G. L. c. 31, § 23.[2] In her complaint, Mrs. Feeney asserted that the application of the veterans' preference formula to the hiring procedure for public employment positions constituted unconstitutional discrimination on the basis of sex. The Commonwealth, the Division of Civil Service (Division), the Civil Service Commission (Commission), and the Director of Civil Service (now Personnel Administra-

---

[1] Sub nom. *Massachusetts* v. *Feeney,* 429 U.S. 66 (1976).

[2] Mrs. Feeney also took an examination for a third civil service position before filing her complaint in Federal court. Although her examination grade of eighty-seven would have tied her for seventeenth place, the veterans' preference formula caused her to be ranked seventieth on the list of applicants. However, permanent appointments to the position for which the examinations were given have not been made yet due to a temporary restraining order imposed by the District Court.

tor of the Commonwealth) (Personnel Administrator)[3] were named as defendants and were represented by the Attorney General during the District Court proceedings.[4]

After entering judgment for the Commonwealth and the Division because they concluded that neither was a person within the meaning of 42 U.S.C. § 1983 (1970) a majority of the three-member District Court ruled that G. L. c. 31, § 23, is unconstitutional.[5] *Feeney* v. *Massachusetts,* 415 F. Supp. 485 (D. Mass. 1976). The District Court recognized that rewarding military service veterans with preference in public employment selection procedures is a meritorious State purpose. The court concluded, however, that the manner the Commonwealth has chosen to implement its interest in the employment of veterans deprives female civil service applicants of equal protection of the laws. The court permanently enjoined the Commission and the Personnel Administrator from applying G. L. c. 31, § 23, in making any future civil service appointments in the Commonwealth.

Two days after the court issued its opinion in the *Feeney* case, the Commission voted to request the Attorney General not to appeal the decision on behalf of the Commission and its members. The chairman of the Commission sent a letter dated March 31, 1976, to the Attorney General to inform him of the Commission's unwillingness to become a party to an appeal of the *Feeney* decision. Similarly, the Personnel Administrator voiced his opposi-

---

[3] The office of Director of Civil Service was discontinued after commencement of the *Feeney* action and the responsibilities of the Director were assigned to the Personnel Administrator of the Commonwealth, St. 1974, c. 835, §§ 51, 57-65.

[4] The *Feeney* case was consolidated with another action, *Anthony* v. *Commonwealth,* involving similar 42 U.S.C. § 1983 (1970) claims made by three women applicants for permanent civil service appointments as attorneys for several State agencies.

[5] The court held that the claims asserted by the plaintiffs in the *Anthony* case had been rendered moot by the enactment of St. 1975, c. 134, which amended G. L. c. 31, § 5. The amendment excluded appointments to the legal positions sought by the *Anthony* plaintiffs from the operation of the civil service law.

tion to an appeal of the decision in a letter to the Attorney General on the same day. The letters from the chairman of the Commission and the Personnel Administrator were followed by a communication from the Governor requesting the Attorney General not to appeal the decision on behalf of the named defendants. The Legislature, however, expressed a contrary viewpoint. On April 6, 1976, both the House of Representatives and the Senate passed resolutions urging the Attorney General to appeal the District Court's decision to the Supreme Court of the United States.

After further consultations with representatives of the Governor and the defendants, and despite their continued opposition to an appeal, the Attorney General filed a notice of appeal from the judgment of the District Court.[6] Thereafter, a jurisdictional statement was filed in the Supreme Court by the Attorney General on behalf of the Commission and the Personnel Administrator. The Commission and the Personnel Administrator advised the Supreme Court by a letter addressed to the clerk that the appeal had been taken without their authorization and that they had requested the Attorney General not to appeal from the judgment of the District Court. They urged the court to dismiss the appeal.

The Supreme Court of the United States has determined that the authority of the Attorney General to represent the named defendants in an appeal to that court has been called into question by the defendants' persistent opposition to an appeal of the District Court judgment. Accordingly, the Supreme Court has certified the following question of State law for our consideration: "Under the circumstances herein presented, does Massachusetts

---

[6] The notice of appeal was accompanied by an application for a stay of judgment pending final disposition of the appeal and a motion for relief from judgment. The motion for relief from judgment and a subsequently filed supplemental motion for relief from judgment were denied, but the court took no action on the application for a stay of the judgment because the enactment of St. 1976, c. 200, resulted in suspending the operation of G. L. c. 31, § 23, pending final disposition of the *Feeney* case by the Supreme Court.

law authorize the Attorney General of the Commonwealth to prosecute an appeal to this Court from the judgment of the District Court without the consent and over the expressed objections of the state officers against whom the judgment of the District Court was entered?"

The question presents an issue which is similar in many respects to that considered by this court in *Secretary of Administration & Fin.* v. *Attorney Gen.*, 367 Mass. 154 (1975). In that case, the Attorney General represented the Secretary of Administration and Finance in the Superior Court trial of a civil action through which the plaintiff[7] undertook to compel the Secretary to take the steps necessary to complete the sale of property owned by the plaintiff to a State agency. A judge of the Superior Court ruled that the Secretary possessed no legal basis to justify his refusal to authorize consummation of the sale. Following entry of judgment adverse to the Secretary, a dispute arose between the Secretary and the Attorney General on the question whether the judgment of the Superior Court would be appealed. Both the Secretary and the Governor requested the Attorney General to prosecute an appeal. The Attorney General concluded that "the ends of government... [would] not be advanced by appealing the... [Superior Court's judgment]." *Id.* at 157 n.2. The Secretary instituted an action for declaratory relief requesting that the court order the Attorney General to obtain appellate review. We held that "the Attorney General, as 'chief law officer of the Commonwealth,'... [citation omitted] has control over the conduct of litigation involving the Commonwealth, and this includes the power to make a policy determination not to prosecute the Secretary's appeal in this case." *Id.* at 159.

The powers and duties of the Attorney General are in part derived from G. L. c. 12, § 3, as amended through St. 1943, c. 83, § 1.[8] The Attorney General is directed by that

---

[7] The Trustees of the Stigmatine Fathers, Inc.

[8] For an overview of the history of the office, see *Secretary of Administration & Fin.* v. *Attorney Gen., supra* at 159-162.

provision to "appear for the commonwealth and for state departments, officers and commissions in all suits and other civil proceedings in which the commonwealth is a party or interested, or in which the official acts and doings of said departments, officers and commissions are called in question, in all the courts of the commonwealth, except upon criminal recognizances and bail bonds, and in such suits and proceedings before any other tribunal, including the prosecution of claims of the commonwealth against the United States, when requested by the governor or by the general court or either branch thereof. All such suits and proceedings shall be prosecuted or defended by him or under his direction. Writs, summonses or other processes served upon such officers shall be forthwith transmitted by them to him. All legal services required by such departments, officers, commissions and commissioners of pilots for district one in matters relating to their official duties shall, except as otherwise provided, be rendered by the attorney general or under his direction."

As we observed in the *Secretary of Administration & Fin.* case, the Legislature through the enactment of G. L. c. 12, § 3, consolidated the responsibility for all legal matters involving the Commonwealth in the office of the Attorney General. The Legislature thereby "empowered, and perhaps required, the Attorney General to set a unified and consistent legal policy for the Commonwealth." 367 Mass. at 163. The issue we are called on to resolve in the present case is whether the power of the Attorney General to establish a coherent legal policy for the Commonwealth includes the authority to chart a course of legal action which is opposed by the administrative officers he represents.

The veterans' preference statute is an expression of legislative policy which is designed to promote public employment of military veterans. The Commission and the Personnel Administrator are charged with the responsibility of executing the legislative program. G. L. c. 31, §§ 21-25. These officials must operate within the authority granted to them by the Legislature. The discretion which

they may employ in fulfilling the administrative duties assigned to them by the Legislature is limited to the sound judgment necessary to accomplish the objectives of the statute.

In her Federal complaint, Mrs. Feeney named the members of the Civil Service Commission and the Director of Civil Service (now Personnel Administrator) as defendants for the purpose of challenging the constitutionality of the veterans' preference statute without producing a direct confrontation between the Federal courts and the Legislature which is proscribed by the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity. See *Ex parte Young,* 209 U.S. 123 (1908); *Edelman* v. *Jordan,* 415 U.S. 651 (1974). The pendency of the action against the defendants neither modified their function as administrators nor empowered them to deviate from the policy formulated by the Legislature for the preferential hiring of veterans.

The role of the Attorney General when he represents the Commonwealth and State officers in legal matters is markedly different from the function of the administrative officials for whom he appears. Not only does the Attorney General represent the Commonwealth as well as the members of the Commission and the Personnel Administrator in accordance with G. L. c. 12, § 3, "[h]e also has a common law duty to represent the public interest.... [Citations omitted.] Thus, when an agency head recommends a course of action, the Attorney General must consider the ramifications of that action on the interests of the Commonwealth and the public generally, as well as on the official himself and his agency. To fail to do so would be an abdication of official responsibility." *Secretary of Administration & Fin.* v. *Attorney Gen., supra* at 163. It would also enervate the Legislature's clearly articulated determination to allocate to the Attorney General complete responsibility for all the Commonwealth's legal business. To permit the Commission and the Personnel Administrator, who represent a specialized branch of the public interest, to dictate a course of conduct to the

Attorney General would effectively prevent the Attorney General from establishing and sustaining a uniform and consistent legal policy for the Commonwealth. *Id.*

The action of the Attorney General in determining to prosecute this appeal is consistent with his traditional right to be heard in litigation to represent the interests of the Commonwealth when the constitutionality of its laws is put in question. See G. L. c. 231A, § 8; Mass. R. Civ. P. 24 (d), 365 Mass. 769 (1974). This exercise of discretion to appear in the District Court proceedings (apparently without objection by defendants) and to press the matter in the court of last resort is consistent with his traditional common law and statutory role.

The authority of the Attorney General, as chief law officer, to assume primary control over the conduct of litigation which involves the interests of the Commonwealth has the concomitant effect of creating a relationship with the State officers he represents that is not constrained by the parameters of the traditional attorney-client relationship. The language of G. L. c. 12, § 3, its legislative history and the history of the office indicate that the Attorney General is empowered, when he appears for State officers, to decide matters of legal policy which would normally be reserved to the client in an ordinary attorney-client relationship. *Secretary of Administration & Fin.* v. *Attorney Gen., supra* at 159. The determination to appeal to the Supreme Court of the United States from a judgment of the District Court invalidating a State statute entails such a legal policy decision. Where, in his judgment, an appeal would further the interests of the Commonwealth and the public he represents, the Attorney General may prosecute an appeal to the Supreme Court of the United States from a judgment of the District Court over the expressed objections of the State officers he represents.

We are not persuaded that the pendency of the case in the Federal rather than the State courts has any effect whatever on the Attorney General's power to appeal the judgment of the District Court without the consent of the State officers for whom he appeared in the District Court.

The first sentence of G. L. c. 12, § 3, makes no distinction between the authority of the Attorney General to appear for the Commonwealth and State officers in the courts of the Commonwealth and his authority to appear for the Commonwealth and State officers in "any other tribunal." Mrs. Feeney suggests that the Attorney General has a more limited role when he appears for State officers in tribunals other than the courts of the Commonwealth. The statutory language, however, does not bear such a construction. The language of the statute, properly read, does not indicate that the Legislature intended to vary the power and duty of the Attorney General to control the conduct of litigation involving the interests of the Commonwealth depending on the forum in which he appears. The final three sentences of the provision further substantiate this view by setting forth several additional litigation-related responsibilities of the Attorney General without drawing any contrasts between the performance of these duties in connection with litigation in the courts of Massachusetts and the discharge of the same obligations in connection with litigation in "any other tribunal." See also G. L. c. 12, § 10, which is consistent with the legislative intent expressed in § 3. To say, as Mrs. Feeney suggests, that the Attorney General may appear in "other tribunals" only on request is inconsistent with the over-all legislative scheme, the common law history of the office, and the language of the disputed section. To sustain Mrs. Feeney's suggestion that the Attorney General's power is subject to greater restrictions when he appears for the Commonwealth or State officers in non-Massachusetts courts, we would be required to say that the Legislature intended to authorize the Attorney General to establish a consistent legal policy for the Commonwealth only in the conduct of litigation in Massachusetts courts. Our reading of G. L. c. 12, § 3, does not lead us to conclude that the Legislature intended to qualify the Attorney General's authority as chief law officer in such a manner.

Our decision affirms the Attorney General's authority to prosecute an appeal where he believes that important

interests of the Commonwealth will be sacrificed if the State officers' unwillingness to consent to appeal is permitted to prevail. Only in this way will official responsibility for these suits and proceedings, at all stages of their progress, be secured. See *McQuesten* v. *Attorney Gen.,* 187 Mass. 185, 187 (1905).[9]

Although the power to formulate legal policy for the Commonwealth may not be used in an arbitrary, capricious or illegal manner, *Secretary of Administration & Fin.* v. *Attorney Gen., supra* at 159 n.4, the record before us in this case contains no evidence that the Attorney General's conduct is of this nature. The Attorney General is acting within his authority under Massachusetts law in prosecuting an appeal to the Supreme Court of the United States despite the opposition voiced by the State officers whom he represents and their refusal to consent to the appeal.

The Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court who will in turn transmit one copy, under seal of this court, to the clerk of the Supreme Court of the United States as answer to the question certified, and will also transmit a copy to each party.

*So ordered.*

---

[9] As a result of our holding in this case, we need not comment on the effect of the legislative resolutions urging the Attorney General to appeal the District Court's judgment in the *Feeney* case.