418 So.2d 779 (1982)
STATE of Mississippi ex rel., Bill ALLAIN, Attorney General et al.
v.
MISSISSIPPI PUBLIC SERVICE COMMISSION.
No. 53709.
Supreme Court of Mississippi.
August 11, 1982.
Bill Allain, Atty. Gen., Robert Frank Spencer, Larry J. Stroud, Sp. Asst. Attys. Gen., Tim Hancock, Gay Dawn Horne, Wise Carter Child & Caraway, James K. Child, Jr. and Henderson S. Hall, Jr., Cupit & Maxey, John L. Maxey, II, Jackson, Stanley L. Taylor, Jr., Biloxi, for appellants.
Bennett E. Smith, Asst. Atty. Gen., Jackson, J. Walter Brown, Natchez, for appellee.
En Banc.

ON MOTION OF MISSISSIPPI POWER AND LIGHT COMPANY TO STRIKE THE ATTORNEY GENERAL'S ASSIGNMENTS OF ERROR WITH REFERENCE TO THE MERITS OF THE RATE INCREASE
WALKER, Presiding Justice, for the Court:
On May 28, 1980, Mississippi Power and Light Company filed a notice of intention to change [increase] rates with the Mississippi Public Service Commission in accordance with Mississippi Code Annotated section 77-3-37 (1972). The rates were suspended by the Commission, and Mississippi Power & Light Company filed a refunding bond and placed the proposed rates and charges into effect under bond on service rendered on and after July 1, 1980.
On June 3, 1980, six days after Mississippi Power & Light Company filed its notice of intention to change rates, the Commission, after discussing the advisability of employing special counsel to assist in the research, preparation and presentation of the rate case, entered an order[1] employing the Honorable Walter Brown of Natchez pursuant to Mississippi Code Annotated section 77-1-13, on a part-time basis, to assist in the case before the Commission and any court with respect thereto.
Also present representing the Commission was the Honorable Bennett Smith, an assistant attorney general, assigned to the Commission on a full-time basis as required *780 by Mississippi Code Annotated section 77-3-9 (1972). This section reads as follows:
The attorney general shall appoint an assistant attorney general on a full-time basis to assist and advise the commission in all matters affecting its powers and duties and to perform such duties and services in connection with this article and the enforcement thereof as the commission may require. Such assistant attorney general shall be in addition to the assistant attorneys general now provided by law, and his qualifications, term of office, and salary shall be the same as those provided by law for other assistant attorneys general. His salary and expenses shall be paid in the same manner and from the same funds as the salary and expenses of the commissioners.
The assistant attorney general assigned to the commission shall upon request of the commission represent and appear for the commission in all actions and proceedings involving any question under this article, and he shall aid in any investigation or hearing had under the provisions hereof.
Mississippi Code Annotated section 7-5-5 (1972) provides in part that:
The attorney general may discharge any assistant attorney general or special assistant attorney general at his pleasure and appoint another in his stead. The assistant attorneys general shall devote their entire time and attention to the duties pertaining to the department of justice under the control and supervision of the attorney general.
Of course, under this statute the attorney general could discharge Mr. Brown or Mr. Smith at his pleasure.
The Commission has no independent authority to employ special legal counsel in any matter except with the prior consent of the attorney general as to the person employed and what he is to be paid. Miss. Code Ann. § 77-1-13 (1972).
It can hardly be argued, therefore, that, among his many other duties, the attorney general, through that office, is required by law to represent the Mississippi Public Service Commission.
The Commission held public hearings before the Commission on the proposed rate increase, beginning August 28, 1980, and which were concluded on November 6, 1980.
An order of the Commission dated November 24, 1980, recites in part:
The following persons intervened in this cause, participated in the proceeding, and presented evidence and testimony at the hearings: The Mississippi Legal Services Coalition, The Mississippi Hunger Coalition, The Onus Fund, the Mississippi LP-Gas Dealers Association, The Ferro Corporation, Brenda Atwell, and Jackie Ingle. Certain other members of the public presented testimony at the public hearings. All interested persons and parties were afforded an opportunity to present statements and evidence. All parties were afforded a reasonable opportunity for cross-examination.
The attorney general personally appeared on the first day of the hearing and announced to the Commission that "I am representing the Commission and the public." The attorney general participated in the examination of witnesses during the hearings although he did not call any witnesses himself.
The attorney general also named a seven-member task force from his office to assist in the rate case.
After the Commission heard all of the evidence and entered its order granting a part of the proposed rate increase and denying part, Mississippi Power & Light Company appealed from the denial of its proposed rate increase, and intervenors appealed from that part of the order granting a rate increase.
The attorney general filed a petition in the Chancery Court of Hinds County requesting permission to intervene in that appeal on behalf of the State of Mississippi as a substantial rate payer ($7,011,824.00 in 1980), and all taxpayers of the State on the theory that they are the ones who pay the bills through taxes. He cites as authority for his right to intervene Mississippi Code *781 Annotated section 77-3-67(1) (Supp. 1981) which provides in part:
In addition to other remedies now available at law or in equity any party aggrieved by any final finding, order or judgment of the commission shall have the right, regardless of the amount involved, of appeal to the chancery court, first judicial district of Hinds County... . Any person whose rights may be directly affected by said appeal may appear and become a party, or the court may upon proper notice order any person to be joined as a party.
The attorney general contends that the State of Mississippi and all its agencies, as substantial purchasers of electricity and all taxpayers of the State, who ultimately pay the expense of government through taxes, have a direct interest in and will be affected by the outcome of the appeal; and, that he had the authority, both at common law and by statute, to represent the State of Mississippi in all suits and proceedings and also to intervene in all suits and proceedings which are of concern to the general public, affect the public interest, or for the protection of the public.
The court took the attorney general's petition under advisement and allowed him to fully participate in the appeal. However, before the court rendered its decision it first denied the attorney general's motion to intervene. The attorney general has appealed this ruling and has included in his brief assignments of error going to the merits of the rate increase. Mississippi Power & Light has now made a motion to strike those additional assignments of error dealing exclusively with the rate increase. This brings the question of the attorney general's right to intervene in the first instance squarely before us.
In State v. Warren, 254 Miss. 293, 307, 180 So.2d 293, 299 (1965), this Court outlined generally the common law duties of the attorney general, saying:
At common law the duties of the attorney general, as chief law officer of a realm, were numerous and varied. He was chief legal adviser of the crown, was entrusted with the management of all legal affairs, and prosecution of all suits, criminal and civil, in which the crown was interested. He had authority to institute proceedings to abate public nuisances, affecting public safety and convenience, to control and manage all litigation on behalf of the state, and to intervene in all actions which were of concern to the general public.
See also 2 R.C.L. Attorney General § 4, pp. 915-916.
Later, in Gandy v. Reserve Life Insurance Company, 279 So.2d 648, 649 (Miss. 1973), speaking to the attorney general's common law powers and authority, the Court said:
The Attorney General is a constitutional officer possessed of all the power and authority inherited from the common law as well as that specifically conferred upon him by statute. This includes the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the state, preservation of order and the protection of public rights. State v. Warren, 254 Miss. 293, 180 So.2d 293, 182 So.2d 234 (1965); Dunn Construction Co. v. Craig, 191 Miss. 682, 2 So.2d 166, 3 So.2d 834 (1941); and Capitol Stages v. State, 157 Miss. 576, 128 So. 759 (1930). (Emphasis added).
Also, consistent with this Court's pronouncement with reference to the attorney general being a constitutional officer and possessed with common law duties, Mississippi Code Annotated section 7-5-1 (1972) provides in part:
The attorney general provided for by section 173 of the Mississippi Constitution shall be elected at the same time and in the same manner as the governor is elected... . He shall be the chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state. No arm or agency of the state government shall bring or defend a suit against another such arm or agency without prior written approval of the attorney general. He shall have the powers of the attorney *782 general at common law and is given the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of state-wide interest.
It is glaringly apparent from the pronouncements of this Court, cited above with reference to the attorney general's common law duties and the statute which reaffirms those duties, that he will be confronted with many instances where he must, through his office, furnish legal counsel to two or more agencies with conflicting interest or views. It is also readily apparent that in performing their duties, the agencies will from time to time make decisions, enter orders, take action or adopt rules and regulations which are, in spite of good intentions, either illegal or contrary to the best interest of the general public.
Under our scheme of laws, the attorney general has the duty as a constitutional officer possessed with common law as well as statutory powers and duties to represent or furnish legal counsel to many interests  the State, its agencies, the public interest and others designated by statute.
Paramount to all of his duties, of course, is his duty to protect the interest of the general public.
The question presented under these circumstances is whether the attorney general must abrogate his responsibility to one or the other. We think not, because, without legal counsel from his office, the agencies would have no representation. The case law and statutes make it unquestionably clear that he is the state's chief legal officer and is charged with managing all litigation on behalf of the state. Moreover, no state agency may employ legal counsel without the prior approval of the attorney general and any such special counsel appointed performs their duties under the supervision and control of the attorney general and serves at his pleasure and may be dismissed by him.
The various state agencies, therefore, are dependent upon the attorney general for legal counsel either by or through his office.
Although this case is one of first impression in this State, a number of other states have addressed the problems involved.
In discussing the unique role of the attorney general in a dispute between two state agencies, the Illinois Supreme Court stated in EPA v. Pollution Control Board, 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50, 52-53 (1977):
[T]he Attorney General's powers encompass advising and representing the State and all agencies in all legal proceedings. In addition, although an attorney-client relationship exists between a State agency and the Attorney General, it cannot be said that the role of the Attorney General apropos of a State agency is precisely akin to the traditional role of private counsel apropos of a client. (See Secretary of Administration & Finance v. Attorney General (1975), 367 Mass. 154, 159, 326 N.E.2d 334, 336). Indeed, where he or she is not an actual party, the Attorney General may represent opposing State agencies in a dispute. See Progressive Party v. Flynn (1948), 401 Ill. 573, 580, 82 N.E.2d 476; see also City of York v. Pennsylvania Public Utility Com. (1972), 449 Pa. 136, 295 A.2d 825, and Arizona State Land Department v. McFate (1960), 87 Ariz. 139, 348 P.2d 912; cf. People ex rel. Scott v. Illinois Racing Board (1973), 54 Ill.2d 569, 301 N.E.2d 285.
The Court continued saying:
The Attorney General's responsibility is not limited to serving or representing the particular interests of State agencies, including opposing State agencies, but embraces serving or representing the broader interests of the State. This responsibility will occasionally, if not frequently, include instances where State agencies are the opposing parties. (Id. at 53).
In Feeney v. Commonwealth, 373 Mass. 359, 366 N.E.2d 1262 (1977), the Massachusetts Supreme Court was concerned with the authority of the attorney general to prosecute an appeal to the Supreme Court of the United States from a judgment of the district court contrary to expressed objections *783 of state officers whom he represented:
The authority of the Attorney General, as chief law officer, to assume primary control over the conduct of litigation which involves the interests of the Commonwealth has the concomitant effect of creating a relationship with the State officers he represents that is not constrained by the parameters of the traditional attorney-client relationship. (Id. at 1266).
The Court went on to say:
Our decision affirms the Attorney General's authority to prosecute an appeal where he believes that important interests of the Commonwealth will be sacrificed if the State officers' unwillingness to consent to appeal is permitted to prevail. Only in this way will official responsibility for these suits and proceedings, at all stages of their progress, be secured. See McQuesten v. Attorney Gen., 187 Mass. 185, 187, 72 N.E. 965 (1905). (Id. at 1267).
In Providence Gas Company v. Burke, 419 A.2d 263 (R.I. 1980), the Supreme Court of Rhode Island held:
In the event that following a commission decision the Attorney General, having previously represented the division, desires to seek review, he should do so in his own name rather than on behalf of the division. In our opinion it is the function of the division to serve the commission in bringing to it all relevant evidence, facts, and arguments that will lead the commission in its quasi-judicial capacity to reach a just result. Once the commission has made its decision, it is inappropriate for the division and its administrator to challenge that decision, even when the administrator (chairman) has dissented. In such a situation, the people and rate payers of the State of Rhode Island may most properly be represented by the Attorney General in seeking review of the commission's decision. The Attorney General need not be precluded from seeking such review merely because he has previously represented the division as counsel. (Id. at 270).
As to other jurisdictions which have addressed the question of the right of the attorney general to intervene on appeal on behalf of the State and to protect the public interest, see: Commonwealth v. Paxton, 516 S.W.2d 865 (Ky. 1974); State v. Public Service Commission, 129 Mont. 106, 283 P.2d 594 (1955); Public Service Coordinated Transport v. State, 5 N.J. 196, 74 A.2d 580 (1950); People v. Illinois Racing Board, 54 Ill.2d 569, 301 N.E.2d 285 (1973). In Paxton, the Kentucky Supreme Court reversed a lower court's ruling that the attorney general had no standing to intervene and allowed intervention in order to adequately represent the people rather that the "machinery of government." Id. at 867. See generally Connecticut Commission on Special Review v. Connecticut Freedom of Information Commission, 174 Conn. 308, 387 A.2d 533 (1978); Feeney v. Commonwealth, 373 Mass. 359, 366 N.E.2d 1262 (1977); EPA v. Pollution Control Board, 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50 (1977).
The prevailing rule is that where the attorney general has common law powers, he has the inherent right to intervene in all suits affecting the public interest when he has no personal interest therein.
However, there is a minority view as expressed in City of York v. Penn. Pub. Utility Comm'n., 449 Pa. 136, 295 A.2d 825 (1972).
In that case, the Pennsylvania Court dealt with the question of respective powers of the attorney general and the state boards and commissions in holding:
Finally, we must decide whether the Commonwealth Court properly refused the request of the Attorney General of Pennsylvania to intervene as an appellant in the proceedings in the Commonwealth Court. We believe that the Attorney General's request was properly refused.
We recognize that the Attorney General's power of intervention, both under statute and at common law, are broad. However, we agree that to allow the Attorney General to intervene as an appellant *784 in an appeal from an order of the Public Utility Commission would create an irreconcilable conflict of interest and thus cannot be permitted. We take the liberty of quoting extensively from the opinion of the Commonwealth Court on this point:
"[F]atal to the Attorney General's position here is the statutory duty that he has to represent the Public Utility Commission and to be allowed to intervene would create an irreconcilable conflict of interest. We are in full accord with what Judge Woodside said in Ault Unemployment Compensation Case, 188 Pa.Super. 260, 146 A.2d 729 n. 1 (1958): `The Attorney General appeared personally before us and argued this and companion cases in favor of the claimants and against the Unemployment Compensation Board. We are of the opinion that he should not have argued against an agency of the Commonwealth which the legislature directed him to represent in litigation. See Section 903(b) of The Administrative Code of April 9, 1929, P.L. 177, 71 PS § 293.
"`The attorney general is charged by the Administrative Code with the duty of not only representing the boards and commissions in court but also of giving them legal advice. See Section 902, 71 PS § 292 and section 512, 71 PS § 192. However, within their respective fields these boards and commissions are given authority to make decisions which involve not only findings of fact, but also conclusions of law. They must determine the law applicable to the facts of the cases before them. As we view it, the legislature did not intend that the attorney general should examine each case before these quasi-judicial bodies to determine how he thinks the board or commission should decide them. The legislature provided for the review of these decisions by courts to which appeals are allowed. Appeals from these decisions are not to the attorney general.'" (Id. at 831-832). (Emphasis theirs).
Considering our scheme of laws with respect to the attorney general being the chief legal officer of the State with the duty to represent the many agencies of the State and his duty to protect the public interest, we are of the opinion and hold that the majority rule will afford maximum protection to the public interest as well as afford complete legal representation to the various state agencies.
The attorney general has a large staff which can be assigned in such manner as to afford independent legal counsel and representation to the various agencies. The unique position of the attorney general requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the attorney general's personal opinion. If the public interest is involved, he may intervene to protect it.
We have carefully considered each of the points raised by Mississippi Power and Light Company and find them to be without merit.
Therefore, the motion of Mississippi Power & Light Company to strike the assignments of error of the attorney general with respect to the merits of the rate case is overruled and he may proceed as an intervenor in this case.
MOTION OF MISSISSIPPI POWER & LIGHT COMPANY TO STRIKE THE ASSIGNMENTS OF ERROR OF THE ATTORNEY GENERAL WITH RESPECT TO THE MERITS OF THE RATE CASE IS OVERRULED, AND HE MAY PROCEED AS AN INTERVENOR IN THIS CASE.
PATTERSON, C.J., SUGG, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.

*785 APPENDIX "A"

*786 
NOTES
[1] A copy of the order appointing special counsel is attached as appendix "A."