SUPERINTENDENT OF INSURANCE

v.

ATTORNEY GENERAL.

ATTORNEY GENERAL

v.

SUPERINTENDENT OF INSURANCE.

Dee and Marie BROWN

v.

SUPERINTENDENT OF INSURANCE.

Supreme Judicial Court of Maine.

Argued March 15, 1989.
Decided May 19, 1989.

---

James T. Kilbreth (orally), Chief Deputy Atty. Gen., Thomas D. Warren, Deputy Atty. Gen., Augusta, for appellants.

Hugh Calkins, Linda Christ, Pine Tree Legal Assistance, Inc., Ronald A. Kreisman, Natural Resources Council of Maine, Augusta, amici curiae.

Peter Murray (orally), Michael L. Parker, Murray, Plumb & Murray, Portland, for appellees.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Justice.

The initial question presented on this appeal is whether the Attorney General is obligated to represent and defend the Superintendent of Insurance in an action seeking review of a rate order issued by the Superintendent. Further questions are raised concerning the Attorney General's standing to seek judicial review of the rate order in his own right, and whether such an action is barred by the fact that his office advised and assisted the Superintendent during the administrative hearings. We conclude that the Superior Court (Kennebec County, *Chandler, J.*) erred in ordering the Attorney General to represent the Superintendent in court and erred in dismissing the Attorney General from the actions seeking judicial review.

The present controversy, involving three separate actions, arises from a public hearing held by the Superintendent pursuant to 24 M.R.S.A. § 2322 (Supp.1988–1989) on a proposal of Associated Hospital Services of Maine for an increase in Blue Cross and Blue Shield non-group rates. The Consumer and Antitrust Division of the Attorney General's Department moved to intervene in the proceedings and the Superintendent granted the request. As an intervenor, the Attorney General was represented by Deputy Attorney General Stephen L. Wessler. At the same time Assistant Attorneys General Linda Pistner and James Bowie, both from the General Government Division, counselled the Bureau of Insurance. Together, they advised the Superintendent throughout the course of the rate hearing and assisted him in drafting his decision.

The Superintendent rendered his decision and Deputy Wessler, on behalf of the Attorney General, moved to re-open the matter for the purpose of changing or modifying the order. The Superintendent denied the motion and the Attorney General filed an action seeking judicial review of that denial pursuant to M.R.Civ.P. 80C (*Attorney General v. Superintendent of Insurance*). Dee and Marie Brown, two non-group subscribers, also filed a Rule 80C petition for review of the Superintendent's order (*Brown v. Superintendent of Insur-*

ance). Assistant Attorney General James Bowie entered a limited appearance for the Superintendent but stated that he would withdraw as soon as the Superintendent had secured private counsel. On the same date, Deputy Wessler entered an appearance in the *Brown* action on behalf of the Attorney General as a party. After retaining private counsel with the approval of the Attorney General,[1] the Superintendent moved to dismiss the Attorney General's 80C action and moved to strike his appearance as a party in Browns' 80C action on the grounds that the Attorney General had "a clear and impermissible conflict of interest and ha[d] no standing to prosecute this appeal." In addition, the Superintendent filed an application for relief in the nature of mandamus (*Superintendent of Insurance v. Attorney General*), requesting that the Attorney General be ordered to provide legal services in *Brown v. Superintendent of Insurance*, to restore the services of Assistant Attorneys General Pistner and Bowie, and to reimburse the Superintendent for legal expenses incurred for private counsel.

Although the three actions were not formally consolidated, they were heard together. After hearing, the Superior Court granted the Superintendent's request for a writ of mandamus and ordered the Attorney General to furnish legal representation to the Superintendent in the *Brown* action. The Superior Court also ruled that the Attorney General is barred from seeking judicial review because his office had advised and assisted the Superintendent with regard to the administrative proceeding. The court held further that the Attorney General has no standing to seek review because he is not representing the interests of the entire public and because he has not suffered any particularized injury sufficient to demonstrate that he was aggrieved. Accordingly, the Superior Court dismissed the Attorney General's 80C action and struck the appearance of the Attorney General as

a party in *Brown*. From these orders the Attorney General appeals.

## I.

### The Attorney General's Obligation to Represent the Superintendent

■ The Superior Court ruled that 5 M.R.S.A. § 191 (1979) imposes a mandatory duty on the Attorney General to represent agencies and officers of the State of Maine in all civil actions involving their official acts. Under the Superior Court's ruling the Attorney General could decline representation only if he determined that the agency's or officer's decision was "legally, ethically or morally indefensible and not in the public interest." We reject such an interpretation of section 191. The common law duties of the Attorney General, even as modified by statute, involve a greater degree of discretion than is permitted under the ruling of the Superior Court.

We have previously described the office of the Attorney General in general terms as follows:

> The Attorney General, in this State, is a constitutional officer endowed with common law powers. See, Constitution of Maine, Article IX, Section 11. As the chief law officer of the State, he may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may, from time to time require, and may institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order, and *the protection of public rights.*

*Lund ex rel. Wilbur v. Pratt,* 308 A.2d 554, 558 (Me.1973) (emphasis in the original). As the historical successor to the English Attorney General, the Attorney General in Maine, as well as in other states, is vested with considerable discretion and autonomy. In this respect, the position of

---

1. In an effort to accommodate the Superintendent's desire for continued representation by Bowie and Pistner, the Attorney General attempted to negotiate a mutually satisfactory arrangement involving a "chinese wall." Ultimately, the negotiations were unsuccessful and private counsel was retained by the Superintendent.

a state attorney general has been accurately summarized in the following terms:

As a result, the attorneys general of our states have enjoyed a significant degree of autonomy. Their duties and powers typically are not exhaustively defined by either constitution or statute but include all those exercised at common law. There is and has been no doubt that the legislature may deprive the attorney general of specific powers; but in the absence of such legislative action, he typically may exercise all such authority as the public interest requires. And the attorney general has wide discretion in making the determination as to the public interest.

*State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 268–69 (5th Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976).

It is undisputed that at common law the Attorney General did not represent every state official nor was he required to do so. In fact, in 1904 Attorney General George M. Seiders expressed concern over private representation of state agencies and urged that the legal matters of the state should be attended to exclusively by his office. 1904 *Report of the Attorney General* 22. The following year, the Legislature responded by enacting the statute now codified as 5 M.R.S.A. § 191. We must determine what change, if any, results from the following language of the statute:

The Attorney General, a deputy, assistant, or staff attorney shall appear for the State, the head of any state department, the head of any state institution and agencies of the State in all civil actions and proceedings in which the State is a party or interested, or in which the official acts and doings of said officers are called in question, in all the courts of the State; and in such actions and proceedings before any other tribunal when requested by the Governor or by the Legislature or either branch thereof. All such actions and proceedings shall be prosecuted or defended by him or under his direction. Writs, summonses or other processes served upon such officers shall forthwith be transmitted by them to him.

All legal services required by such officers, boards and commissions in matters relating to their official duties shall be rendered by the Attorney General or under his direction. Said officers or agencies of the State shall not act at the expense of the State as counsel, nor employ private counsel except upon prior written approval of the Attorney General. ...

5 M.R.S.A. § 191.

We are not persuaded that the use of the word "shall" removes all discretion and requires that the Attorney General represent all state agencies regardless of his view of the public interest. Both the history of the enactment of section 191 and its plain language support our conclusion that the Legislature directed the Attorney General to control state litigation and consolidated control in his office without mandating representation in all cases. A contrary conclusion would ignore the provisions of the statute authorizing the employment of private counsel with "written approval of the Attorney General." Our sister Court in Massachusetts has rendered a similar interpretation of a comparable statute. In *Secretary of Admin. and Finance v. Attorney General*, 367 Mass. 154, 326 N.E.2d 334 (1975), the Court held that the Attorney General's control of the conduct of litigation "includes the power to make a policy determination not to prosecute the Secretary's appeal in this case." *Id.* at 159, 326 N.E. at 336–37. *Accord, Feeney v. Commonwealth*, 373 Mass. 359, 366 N.E. 2d 1262 (1977). We need not decide whether approval could be withheld for the employment of private counsel because of a disagreement over the public interest. It is sufficient for our purposes to hold that the Attorney General is not obligated to render representation to the Superintendent in these circumstances. Accordingly, in *Superintendent of Insurance v. Attorney General*, the Superior Court erroneously granted relief in the nature of mandamus.

## II.

### Standing

■ The Superior Court dismissed the Attorney General's 80C action and struck

his appearance in *Brown*, partly on the basis that the Attorney General is without standing to seek review. Although the applicable insurance law purports to confer standing on any party, the court reasoned that the Administrative Procedures Act (the "A.P.A.") imposes an additional requirement that a party be aggrieved. Finding no particularized injury on the part of the Attorney General, the court found no standing. The court erred in ruling that on appeal from the Superintendent's rate decision, a party is required to show particularized aggrievement in order to have standing. The controlling statute provides otherwise.

The statute regulating rate proceedings for a nonprofit hospital or medical service organization includes the following appeal provision:

> Any person whose interests are substantially and directly affected and aggrieved by an order or decision of the superintendent *or any party* to a hearing held pursuant to section 2322 may appeal therefrom as provided in Title 24-A, section 236.

24 M.R.S.A. § 2326 (Supp.1988–1989) (emphasis added). The general provision in the Insurance Code referred to in the quoted statute, provides in relevant part as follows:

> Any person who was a party to the hearing may appeal from an order of the superintendent within 30 days after receipt of notice. Any person not a party to the hearing whose interests are substantially and directly affected and who is aggrieved by an order of the superintendent may appeal within 40 days from the date the decision was rendered.

24-A M.R.S.A. § 236(3) (Supp.1988–1989). Despite these specific provisions applicable to insurance rate proceedings, the Superior

Court ruled that the A.P.A. limits judicial review to a "person who is aggrieved by final agency action" and that it displaces all inconsistent provisions.

The A.P.A. contains the following general provisions concerning judicial review and inconsistent laws:

> Except where a statute provides for direct review or review of a pro forma judicial decree by the Supreme Judicial Court or where judicial review is specifically precluded or the issues therein limited by statute, any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter.

5 M.R.S.A. § 11001(1) (Supp.1988–1989).

> Except where expressly authorized by statute, any statutory provision now existing or hereafter adopted which is inconsistent with the express provisions of the Maine Administrative Procedure Act shall yield and the applicable provisions of this Act shall govern in its stead.

5 M.R.S.A. § 8003 (1979). Our comparison of the review provisions of the A.P.A. and the Insurance Code reveals no inconsistency. Section 11001(1) states *only* the entitlement of an aggrieved party to judicial review. The statute contains no language precluding other statutory grants. Accordingly, there is no conflict with the more expansive grant of standing conferred by 24 M.R.S.A. § 2326 and 24-A M.R.S.A. § 236. The standing claimed by the Attorney General under the Insurance Code as a party is not precluded by the A.P.A.[2]

### III.

*Conflict of Interest*

■ As an additional ground for dismissing the Attorney General's 80C action, the

---

**2.** We reject the Superintendent's argument that despite the fact that intervention was granted, the Attorney General is not a party because of our opinion in *Central Maine Power Co. v. Public Util. Comm'n.*, 382 A.2d 302 (Me.1978). In that case we held that the Attorney General "cannot have standing to assert the interests of only one segment of ratepayers, the residential—in particular when, as here, such representation might be to the detriment of other groups of ratepayers." *Id.* at 315. *Central Maine* involved rates for both residential and commercial customers and the Attorney General attempted to protect the interests of one group to the detriment of the other. The present case involves only non-group rates. Any advantage achieved in these proceedings, will not necessarily disadvantage any other segment of the public. *Central Maine* is therefore factually inapposite.

Superior Court ruled that he cannot "attack the decision of a State bureau or agency which received the legal assistance of the Attorney General's office in reaching and drafting that decision." Relying upon a conflict of interest analysis, the court held that the prior representation of the Superintendent by members of the Attorney General's legal staff precluded his action for judicial review. The narrow issue before us may be stated as follows: If an agency is represented in court by independent private counsel, is it ethically permissible for the Attorney General to seek judicial review of an administrative decision of that agency, even though the agency was counselled by members of his staff during the administrative proceeding?

Because of the multiple duties imposed on the office, the status of the Attorney General is unique. As a member of the bar, he is subject to the ethical standards of the bar, but he is also a constitutional officer charged with common law and statutory duties and powers. As an officer of government he is directed to control and manage the litigation of the State by providing counsel to state agencies and by approving the retention of private counsel. Of at least equal importance, however, is his role as the legal representative of the people of the State in pursuing the public interest. The Superior Court determined that an irreconcilable conflict existed between his duties as a member of the bar and the duties of his office to represent the public interest. The court resolved the conflict by ordering the abandonment of the duty to represent the public interest. The court erred.

The legal dilemma posed by this case has been cogently described in a similar case as follows:

It is glaringly apparent from the pronouncements of this Court, cited above with reference to the attorney general's common law duties and the statute which reaffirms those duties, that he will be confronted with many instances where he must, through his office, furnish legal counsel to two or more agencies with conflicting interest or views. It is also readily apparent that in performing their duties, the agencies will from time to time make decisions, enter orders, take action or adopt rules and regulations which are, in spite of good intentions, either illegal or contrary to the best interest of the general public.

Under our scheme of laws, the attorney general has the duty as a constitutional officer possessed with common law as well as statutory powers and duties to represent or furnish legal counsel to many interests—the State, its agencies, the public interest and others designated by statute.

Paramount to all of his duties, of course, is his duty to protect the interest of the general public.

The question presented under these circumstances is whether the attorney general must abrogate his responsibility to one or the other.

*State ex rel. Allain v. Mississippi Pub. Service Comm'n.*, 418 So.2d 779, 782 (Miss. 1982). A decision in this case requires us to recognize that we are not dealing with private lawyers. Rather, different ethical considerations are at stake here. We are required to balance ethical concerns with concerns for effective representation of both the public interest and public agencies.

In its ruling, the Superior Court failed to specify any particular ethical principle that had been violated. The Superintendent argues, however, that the bar rules forbidding employment that would conflict with the interest of a present or former client are implicated.[3] Initially, we note that

---

**3.** Maine Bar Rule 3.4 provides in relevant part:

(b) Conflict of Interest. A lawyer shall not accept employment if the exercise of his independent professional judgment in behalf of a client will be, or is likely to be, adversely affected by the acceptance of such employ-

ment, or if it would be likely to involve him in representing differing interests ....

(c) Multiple Employment Forbidden. A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be, or is likely to be, adversely affected by his repre-

such provisions are principally designed to protect confidential communications between attorney and client. When dealing with public agencies and their lawyers, however, such considerations are of lesser importance. Under our rules of evidence, confidential communications between a public agency and its lawyer are the exception rather than the rule.[4] Moreover, the Attorney General and his staff are not the equivalent of a private law firm. In promulgating the Model Rules of Professional Conduct, the American Bar Association has expressly recognized that lawyers in an attorney general's office

> may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. They also may have authority to represent the "public interest" in circumstances where a private lawyer would not be authorized to do so. These Rules do not abrogate any such authority.

ABA Model Code of Professional Responsibility, Preamble, Scope and Terminology at p. 12 (1983). The Committee on Ethics and Professional Responsibility of the American Bar Association observed in Formal Opinion No. 342 (1975):

> The relationships among lawyers within a governmental agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice.

The majority of courts confronting similar issues have recognized the unique status of the Attorney General. *See Conn. Comm'n. on Special Revenue v. Conn.*

*Freedom of Information Comm'n.*, 174 Conn. 308, 319, 387 A.2d 533, 537 (1978) ("This special status of the attorney general—where the people of the state are his clients—cannot be disregarded in considering the application of the provisions of the code of professional responsibility to the conduct of his office."); *Feeney v. Comm.*, 373 Mass. at 365–66, 366 N.E.2d at 1266 (In exercising his "common law duty to represent the public interest" the Attorney General "is not constrained by the parameters of the traditional attorney-client relationship."); *see also E.P.A. v. Pollution Control Bd.*, 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50 (1977); *Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865 (Ky. 1974); *Humphrey ex rel. State v. McLaren*, 402 N.W.2d 535 (Minn.1987); *State ex rel. Allain v. Mississippi Pub. Service Comm'n.*, 418 So.2d 779 (Miss.1982). *But see People ex rel. Deukmejian v. Brown*, 29 Cal.3d 150, 624 P.2d 1206, 172 Cal.Rptr. 478 (1981); and *City of York v. Pennsylvania Pub. Util. Comm'n.*, 449 Pa. 136, 295 A.2d 825 (1972).

The Superior Court relied exclusively on *Deukmejian* in disqualifying the Attorney General from pursuing judicial review. The holding of the California Court is bluntly stated:

> In short, the Attorney General cannot be compelled to represent state officers or agencies if he believes them to be acting contrary to law, and he may withdraw from his statutorily imposed duty to act as their counsel, but he may not take a position adverse to those same clients.

624 P.2d at 1209, 172 Cal.Rptr. at 481. *Deukmejian* could be distinguished on the basis of the peculiar relationship between the attorney general and the governor un-

---

sentation of another client, or if it would be likely to involve him in representing differing interests ....

(e) Interest of Former Client. A lawyer shall not accept employment adverse to a former client without that client's informed written consent if such new employment involves the subject matter of the former employment or may involve the use of confidential information obtained through such former employment.

4. M.R.Evid 502(d)(6) provides that there is no lawyer client privilege

> [a]s to communications between a public officer or agency and its lawyers unless the communications concern a pending investigation, claim or action and the court determines that disclosure will seriously impair the ability of the public officer or agency to process the claim or conduct a pending investigation, litigation or proceeding in the public interest.

der California law. Indeed the California Supreme Court specifically relied upon their peculiar law in rejecting the authority recited above. *See id.* at 1209, 172 Cal. Rptr. at 481. More importantly, however, we find the California rationale unpersuasive because it equates the Attorney General with a private lawyer and fails to reflect adequately the unique status of the Maine constitutional office.

██ In sum, we conclude that when the Attorney General disagrees with a state agency, he is not disqualified from participating in a suit affecting the public interest merely because members of his staff had previously provided representation to the agency at the administrative stage of the proceedings. Other less drastic means of insuring effective representation for state officers and agencies exist. The abandonment of the public interest, as was ordered in this case, is not necessary. We endorse the practical resolution enunciated by the Supreme Court of Mississippi:

> The attorney general has a large staff which can be assigned in such manner as to afford independent legal counsel and representation to the various agencies. The unique position of the attorney general requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the attorney general's personal opinion. If the public interest is involved, he may intervene to protect it.

*Allain,* 418 So.2d at 784. Because the Superintendent is now represented by private counsel, there is no ethical impediment to the legal action brought by the Attorney General.

The entry is:

The judgment entered in *Superintendent of Insurance v. Attorney General* is vacated and remanded for entry of judgment in favor of defendant.

The order striking the appearance of the Attorney General in *Brown v. Superintendent of Insurance* is vacated and the case is remanded for further proceedings consistent with the opinion herein.

The order dismissing *Attorney General v. Superintendent of Insurance* is vacated and the case is remanded for further proceedings consistent with the opinion herein.

All concurring.