NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-971

DANA D. DUPRAS, SR.

vs.

DEPUTY CHIEF OF POLICE OF FALL RIVER & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Pursuant to G. L. c. 140, § 131 (f), the deputy chief of the Fall River police department suspended the license to carry (LTC) a firearm held by Dana D. Dupras, Sr.  Following an evidentiary hearing in the District Court, a judge affirmed. Dupras sought relief in the nature of certiorari in the Superior Court pursuant to G. L. c. 249, § 4.  On the request of the parties, a judge of the Superior Court entered an order reporting "this matter" to this court pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996), to address the constitutionality of G. L. c. 140, §§ 131 and 131L.  Because the trial court judge did not consider the constitutional challenge

---

[1] Justices of the Fall River Division of the District Court Department of the Trial Court.

to the statutes and the Attorney General did not receive adequate notice of the constitutional challenge as required by Mass. R. Civ. P. 24 (d), 365 Mass. 769 (1974), and Mass. R. A. P. 10 (a) (4), as appearing in 481 Mass. 1618 (2019), the report is discharged, and the case is remanded to the Superior Court for further proceedings.

Background.  A brief procedural background is necessary. On December 10, 2019, the deputy chief notified Dupras that his LTC was suspended because he was an "unsuitable person" under G. L. c. 140, § 131 (f).  Dupras sought judicial review in the Fall River District Court of the deputy chief's decision and claimed the evidence did not support the determination that he was an unsuitable person under the statute.  On November 20, 2021, following an evidentiary hearing, a District Court judge affirmed the suspension based on testimony showing Dupras' improper storage of a firearm in violation of G. L. c. 140, § 131L.

On December 7, 2021, Dupras filed his complaint in the nature of certiorari in the Superior Court.  His complaint raised two claims:  (1) the suspension lacked evidentiary support and (2) the suspension violated his right to possess firearms and right to due process of law.  Dupras served a copy of the complaint on the justices of the Fall River Division of the District Court Department of the Trial Court as a nominal

2

party.  On April 5, 2022, attorneys from the Administrative Office of the Trial Court (AOTC) filed an answer on behalf of the justices, in the form of a certified copy of the Fall River District Court proceedings.  One AOTC attorney signed the answer and certification as a special assistant attorney general.  On April 26, 2022, counsel for AOTC reported to Dupras' counsel that AOTC "does not intend to file any pleadings in this matter, beyond the Certified Court Record."

The next month, on May 5, 2022, Dupras filed a motion for judgment on the pleadings, and the deputy chief filed an opposition and supporting memorandum of law.  On that same date, Dupras also filed a "Certificate Pursuant to Superior Court Rule 9C" reporting AOTC's intention not to file any further pleadings in the case.

While the motion for judgment on the pleadings was pending, Dupras filed, on July 1, 2022, a motion for leave to file a supplemental memorandum.  As grounds in support of the motion, Dupras noted the questionable "constitutionality" of G. L. c. 140, §§ 131 and 131L, following the recent Supreme Court decision in New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022) (Bruen).  Counsel for the deputy chief and AOTC assented to the motion, and Dupras forwarded a copy of the motion to the Attorney General.  On September 20, 2022, Dupras, the deputy chief, and AOTC joined in a motion "for report of

3

motion for judgment on the pleadings for determination by" this court. On September 26, 2022, a judge of the Superior Court allowed the motion in an endorsement order "report[ing] this matter to the Appeals Court."

On appeal, Dupras now raises four issues in his brief: (1) whether the Bruen decision renders the firearm suspension provisions under G. L. c. 140, § 131 (f), facially violative of the Second Amendment to the United States Constitution, (2) whether the Bruen decision renders G. L. c. 140, § 131 (f), unconstitutional as applied, (3) whether the Bruen decision renders the firearm storage provisions under G. L. c. 140, § 131L, violative of the Second Amendment to the United States Constitution, and (4) whether the evidence before the District Court judge was sufficient to support the determination that Dupras was unsuitable to hold a LTC because he violated the storage provisions of G. L. c. 140, § 131L. Dupras served his brief on counsel for the deputy chief and AOTC, but he did not serve the Attorney General.

Discussion. The Legislature has "allocate[d] to the Attorney General complete responsibility for all the Commonwealth's legal business." Feeney v. Commonwealth, 373 Mass. 359, 365 (1977). Consistent with this allocation, courts require, at a minimum, special notice of a constitutional challenge to a statute: "When the constitutionality of an act

4

of the legislature . . . is drawn in question in any action to which the Commonwealth or an officer, agency, or employee thereof is not a party, the party asserting the unconstitutionality of the act . . . shall notify the attorney general within sufficient time to afford [] an opportunity to intervene." Mass. R. Civ. P. 24 (d). Under this rule, "the obligation to notify the attorney general that the constitutionality of an act of the legislature or of a municipality is being questioned in the action is placed upon the party asserting the unconstitutionality of the act." Reporter's Notes to Rule 24 (d), Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 38 (LexisNexis 2023). Similar notice is required within fourteen days after an appeal is docketed when the Commonwealth or an agency is not a party to the appeal: "the party asserting the unconstitutionality of the act shall notify the attorney general of such challenge." Mass. R. A. P. 10 (a) (4).

We do not believe the Attorney General had sufficient notice of the proceedings here becoming a wide-ranging challenge to the constitutionality of G. L. c. 140, §§ 131 (f) and 131L. The case began in the District Court as a routine review of a decision regarding an LTC. At that point, the only parties were Dupras and the deputy chief. Thereafter, AOTC became a nominal party through the certiorari complaint in the Superior Court,

5

but the constitutionality of the statutes was not initially challenged in that proceeding.  Indeed, AOTC notified Dupras' counsel that it "does not intend to file any pleadings in this matter, beyond the Certified Court Record."  As a practical matter, after filing its answer, AOTC was not an active litigant and had no reason to be given the routine nature of the dispute between Dupras and the deputy chief.  Once the scope of the litigation expanded and Dupras challenged the constitutionality of G. L. c. 140, §§ 131 (f) and 131L, the Attorney General should have been fully notified of the entirety of the proceedings as contemplated by Mass. R. Civ. P. 24.  Apart from that deficient notice, by the time the case reached this court and the constitutional challenges evolved into a broadside attack against two significant pieces of the statutory scheme regulating firearms, the Attorney General should have been notified "in writing or by use of any electronic method the attorney general may designate for this purpose."  Mass. R. A. P. 10 (a) (4).

In these circumstances, the efforts at providing notice did not suffice.  Providing notice of the certiorari complaint to a special assistant attorney general employed by AOTC, or even obtaining assent to reporting the case by AOTC counsel, is not the equivalent of providing notice to the Attorney General about constitutional challenges to both statutes.  Similarly, mailing

6

a copy of the motion to file a supplemental memorandum to the Attorney General was not sufficient to apprise the Attorney General of the context of the motion or the nature of the evolving proceedings.

Here, the absence of specific notice to the Attorney General is significant. Given the importance of the constitutional issues raised, the Attorney General should have had the option to intervene in the Superior Court proceedings. See, e.g., Chardin v. Police Comm'r of Boston, 465 Mass. 314, 321 (2013) ("The Attorney General, on behalf of the Commonwealth, was allowed to intervene to defend the constitutionality of" G. L. c. c. 140, § 131 [d]). The city of Fall River represents the narrow interest of defending the actions of its deputy chief. By contrast, as the "chief law officer" of the Commonwealth, Secretary of Admin. & Fin. v. Attorney Gen., 367 Mass. 154, 159 (1975), the Attorney General represents a broader interest, having been empowered by the Legislature to "set a unified and consistent legal policy for the Commonwealth" (citation omitted). Id. at 163. Put another way, the Attorney General represents not just a city, but as a statewide elected official, represents the interests of the "supreme power" of our government -- "the people" -- and should have an opportunity to be heard on an issue of such wide public importance. Commonwealth v. Exxon Mobil Corp., 489 Mass. 724,

7

730 n.6 (2022), quoting Secretary of Admin. & Fin., supra at 161. The people, through the elected Attorney General, have not been heard in this case.

Apart from our concerns about the notice provided, we decline to accept this reported case due to its procedural posture. As noted above, the case in the District Court did not raise any question with respect to the constitutionality of the statutes. Review in that court was "narrow in scope," Godfrey v. Chief of Police of Wellesley, 35 Mass. App. Ct. 42, 45 (1993), and properly limited to determining whether, on all the facts, there was a "reasonable ground" for suspending the LTC. G. L. c. 140, § 131 (f). The certiorari proceeding in the Superior Court was likewise limited to correcting "substantial errors of law apparent on the District Court record." Godfrey, supra at 43. See G. L. c. 249, § 4. In contrast to the limited scope of review in the District Court and the Superior Court, the report asks us, in the first instance, to provide a comprehensive review of the constitutionality of two statutes without benefit of the Attorney General's position or any decision of a Superior Court judge. The truncated posture of the present case illustrates why we have previously discouraged reporting matters and encouraged "in most cases" full adjudication in the trial court followed by the usual appellate process. Commonwealth v. Lotten Books, Inc., 12 Mass. App. Ct.

8

625, 626 n.3 (1981).  When discharging our function following a trial court adjudication, "appellate judges benefit from rulings of law made by trial judges, not least because sound rulings may obviate an appeal altogether.  When we have the benefit of a decision by a trial judge, that is generally the jumping off place for our own deliberative process."  Transamerica Ins. Group v. Turner Constr. Co., 33 Mass. App. Ct. 446, 447 n.2 (1992).  See Heck v. Commonwealth, 397 Mass. 336, 339 (1986) ("to the extent that matters of public policy and constitutional questions are raised, we have stated a preference for passing on the issues in light of a fully developed trial record rather than in the abstract").

> The report is discharged and the case is remanded to the Superior Court for further proceedings consistent with the memorandum and order.
>
> By the Court (Vuono, Hand & Hodgens, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  November 16, 2023.

---

[2] The panelists are listed in order of seniority.