State, Ex Rel. Patterson, Use Adams County *v.* Warren, et al.

No. 43653 November 22, 1965 180 So. 2d 293

January 31, 1966 182 So. 2d 234

*Joe T. Patterson*, Atty. Gen., Jackson; *Matthew Harper, Jr.,* Special Asst. Atty. Gen., Laurel, for appellant.

*Watkins & Eager,* Jackson; *Laub, Adams, Forman & Truly,* Natchez, for appellees.

Etheridge, P. J.

This suit was brought in the Chancery Court of Adams County by Joe T. Patterson, Attorney General of the State of Mississippi, and E. B. Golding, State Auditor of Public Accounts, for and on behalf of the state for the use and benefit of Adams County. The defendants were the five incumbent members of the Board of Supervisors of Adams County; the executors of the estate of a former member of the board; the widow and sole devisee and legatee of a former member; two other former members of the board; the chancery clerk and clerk of the board; the attorney for the board; a person who received certain engineering fees from the supervisors; and the corporate sureties on the official bonds of these persons. Before trial, the court dismissed the state auditor as a party complainant, because, it thought, the statutory demand upon defendants prior to suit was inadequate. After a lengthy trial on the merits, the court did not decide the factual issues, but dismissed the attorney general as the other party complainant, and thus dismissed the suit. It concluded the attorney general did not have the right to bring this type of action, because it was of local and not statewide interest. From these decrees the state through its attorney general and state auditor have appealed.

The issues involve (1) the sufficiency of the written demand on defendants by the auditor; (2) the power of the attorney general to bring this suit for the state; and (3) whether this action by the state is a "personal action" which survives against the sureties and the personal representatives, and devisees and legatees of deceased members of the county board of supervisors, charged with appropriations of county funds to objects not authorized by law. We hold that both the auditor and attorney general properly brought this suit, and that the action survived. Hence the orders of the chancery court are reversed, and the cause remanded for findings of fact and a decree by that court.

The bill of complaint (filed in 1957) charged that an audit of the books, records and financial affairs of the Board of Supervisors of Adams County, for the years from January 1952 through January 1957, inclusive, disclosed certain expenditures not authorized by law for which the members of the board of supervisors for such period of time, the clerk of the board, and the other named defendants became liable in various respects. In forty-eight counts the bill charged in detail numerous illegal appropriations and expenditures by the board of supervisors, totaling (after settlement of one item) the sum of $298,797.34. It prayed that after hearing the court would render judgment against the defendants jointly and severally for that sum, which, it alleged, had been illegally and unlawfully expended by defendants in the construction and purchase of materials and to other objects not authorized by law.

Before the trial, defendants filed a motion to dismiss the bill on the ground that complainants had failed to comply with the statute by making a written demand on each and all of the defendants in a manner and form sufficient to advise each of the amount he owed; that certain of the defendants were members of the board of supervisors for only a few weeks or months, and were

not liable for appropriations made at a time when they were not members. In March 1959 the chancery court dismissed the state auditor as a party complainant, on the ground this officer made a demand not in compliance with the statute. At that time it stated that, although the law was not clear, the attorney general had the right under his broad common law powers to continue prosecution of the suit for the state.

The case was tried in November 1961 with the attorney general continuing in the suit as party complainant. There was a lengthy trial, with considerable testimony and documentary evidence, following which the chancery court took the case under advisement, with counsel to furnish briefs by April 1962. However, on March 8, 1963, the court entered an order remanding the cause to the docket for further pleadings and evidence. It recited that the court had heard the evidence and received written briefs, but there was insufficient evidence to enable it to reach a fair and equitable decree. The cause was remanded to the docket for further proof, particularly in the matter of apportioning liability, if any, among the several defendants.

The defendants then entered a plea to jurisdiction, and a motion to dismiss: the subject matter of the litigation was "purely of local interest and not of statewide concern" and the attorney general was without power to maintain an action only local in nature. The chancery court sustained this motion and dismissed the case on June 20, 1963. After considerable delay in getting the record to this Court, for many reasons including the illness of the court reporter and her absence, and after the issuance of a writ of certiorari from this Court, the record was filed here on February 1, 1965.

The first question involves sufficiency of the written demand made by the state auditor on defendants. Mississippi Code Annotated section 3877-01 (being Laws of 1952, ch. 176, § 1), created a State Department of Audit

under supervision of the State Auditor. Section 3877-05 (6) provides:

The department shall have the power and it shall be its duty: . . .

(6) To make written demand, when necessary, for the recovery of any amounts representing public funds improperly withheld, misappropriated, and/or otherwise illegally expended by an officer, employee, or administrative body of any state, county, or other public office, and/or for the recovery of the value of any public property disposed of in an unlawful manner by a public officer, employee, or administrative body, such demands to be made upon the person or persons liable for such amounts and upon the surety on official bond thereof, provided that each such demand shall grant to the person or persons upon which it is made the privilege of paying into the proper treasury the amount demanded within thirty (30) days from date thereof, together with interest thereon in the sum of six per cent (6%) from date such amount is shown to be due; in the event, however, such person or persons shall refuse, neglect or otherwise fail to pay the amount demanded and the interest due thereon within the allotted thirty (30) days, the department shall have authority and it shall be its duty to institute suit and the attorney general shall prosecute the same in any court of the state to the end that there shall be recovered the total of such amounts from the person or persons and surety on official bond named therein; and the amounts so recovered shall be paid into the proper treasury of the state, county, or other public body, through the office of the department; . . .

The written demand, dated April 27, 1957, was signed by the State Auditor, and was addressed to the five incumbents of the Board of Supervisors of Adams County, being Messrs. Warren, Longmire, Carter, Brown and Callon. It was also addressed to Mrs. Betty Carter and

James Carter, executors of the estate of H. W. Carter, former member, but this was later amended to apply to Mrs. Carter as sole heir and devisee; to Mrs. Betty Carter, former member of the board; to Mrs. Clara McGehee, executrix of the estate of F. M. McGehee, former member of the board; and Robert E. Burns, Chancery Clerk and Clerk of the Board of Supervisors; and to the surety companies for all these parties. The letter stated:

Ladies and Gentlemen:

Pursuant to authority vested in me under Section 5(6), Chapter 176, Laws of 1952, as head of the State Department of Audit, I hereby make formal demand on you for payment into the treasury of Adams County, Mississippi, through my office within thirty (30) days from date thereof, of the sum of three hundred thousand, five hundred seventy five dollars and forty eight cents ($300,575.48) which represents in the aggregate:

(1) The amount of misused county funds by the board of supervisors and the clerk of the board during the years 1952 through 1956 _____$283,561.78

(2) Interest due thereon computed on the basis of six percent (6%) for one (1) year under Section 5(6), Chapter 176, Laws of 1952 _____ 17,013.70

Total _____$300,575.48

An itemized statement of the above demand is attached thereto.

Please be advised that in event full settlement of this demand is not made within thirty (30) days, it is my duty under the laws of the State of Mississippi

to institute suit and the Attorney General shall prosecute same in any court of the state to the end that the total amount thereof shall be recovered.

Attached to this letter was a "Summary of Illegal Expenditures and Unauthorized Use of County Equipment Resulting in a Loss and Waste of Adams County Taxpayers' Funds," which contained forty-seven separate schedules referring to specific items. Following this was an itemized, detailed specification of each of the forty-seven schedules.

██ ██ Mississippi Constitution 1890, section 161 gives the chancery court concurrent jurisdiction "of suits on bonds of fiduciaries and public officers for failure to account for money or property received, or wasted or lost by neglect or failure to collect, . . ." Code section 3877-05 (6) provides the state auditor may bring suits of this nature. He must make (1) a "written demand," (2) for "such amounts" withheld, misappropriated, or expended, (3) to be made upon the "person or persons liable for such amounts and upon the surety on official bond thereof." (4) The demand must "grant to the person or persons upon whom it is made the privilege of paying . . . the amount demanded within thirty days."

A substantial compliance with the statutory requirement of a written demand is sufficient. ██ ██ We think the present one was adequate. It specified in detail the instances in which there was alleged irregularities and unlawful appropriations, and identified each. It contained a summary of the alleged illegal expenditures, and a detailed specification of each of the 47 schedules of the asserted improper expenditures. This was a detailed statement of the nature, source, time and amount of each item.

██ ██ No particular form of demand is required by the act, if it notifies the defendant of the alleged improper expenditures and gives them an opportunity to perform their duties as to them. See Truax v. Parvis, 12 Del.

330, 32 Atl. 227 (1886); 1 C.J.S. *Actions* § 27(c) (1936). Any language intended to constitute a demand which plainly informs the party of whom the demand is made that he is requested to perform the duty or obligation to which it refers is sufficient. See Mullally v. Townsend, 119 Cal. 47, 50 Pac. 1066 (1897); 1 Am. Jur. 2d *Actions* § 84 (1962).

 Appellees argue that section 3877-05(6) created this right of action in the state auditor, and conditioned it upon his first making a written demand. However, the statute does not create a new cause of action, since such a right of action was in existence before its enactment. Miss. Code Ann. § 2944 (1956); Paxton v. Baum, 59 Miss. 531 (1882); Miller v. Tucker, 142 Miss. 146, 105 So. 774 (1925); Coleman v. Shipp, 223 Miss. 516, 78 So. 2d 778 (1955). Since the statute does not create the right of action, it is not an integral part of the cause of action in that sense. It is a legislative requirement which the state auditor must follow by substantial compliance. Cf. 1 Am. Jur. 2d *Actions* § 84 (1962).

The acts complained of were those of members of the board of supervisors during the specified period of time, of the chancery clerk, and of employees of the county. They had, or should have had, personal knowledge of them. The statute implements an existing right, and vests certain powers and duties in the state auditor.

Appellees argue that the demand did not advise each of them how much money each owed; and the statute contemplated a demand upon which the recipient could act. However, it details every alleged unlawful appropriation or irregularity, and identifies every warrant issued by the board of supervisors. Each defendant knew the period of his term of office or service for the county, and thereby was sufficiently advised of the extent of his liabilities, if any. The demand made upon each defendant for the entire sum, in the letter to which the

itemization was attached, must be read along with the itemization. When thus interpreted, it constituted a substantial compliance with the demand provision.

■ ■ Where a party demands more than he is entitled to receive, that circumstance alone will not justify the other party in refusing to deliver or pay that to which the demandant is entitled, provided it is distinct, well known and clearly distinguishable from that to which the latter had no right. Colby v. Reed, 99 U. S. 560, 25 L. Ed. 484 (1879). Moreover, we do not see any way in which the defendants could have been misled by this detailed and itemized written demand sent to them by the auditor. The purposes of the statute were served.

## II.

The chancery court also erred in sustaining the defendants' motion to dismiss the attorney general as the remaining party complainant for the state in this action, after trial on the merits.

■ ■ The attorney general is a constitutional officer. Miss. Const. 1890 § 173. He has the powers which were vested in him at common law, and those which have been conferred upon him by statute. A chapter in the Code defines his statutory powers and duties. Miss. Code Ann. §§ 3826-3851 (1956). Code section 3840 provides:

The attorney-general shall, at the request of the governor or other state officer, in person or by his assistant, prosecute suit on any official bond, or any contract in which the state is interested, upon a breach thereof, and prosecute or defend for the state all actions, civil or criminal, relating to any matter connected with either of the state offices; and he may require the service or assistant of any district attorney in and about such matters or suits.

Further, the attorney general is given the power to represent the state in all suits against the state, and to act as counsel for any of the state officers, "in suits

brought by or against them in their official capacity touching any official duty or trust, . . .'' Code § 3841.

At common law the duties of the attorney general, as chief law officer of a realm, were numerous and varied. He was chief legal adviser of the crown, was entrusted with the management of all legal affairs, and prosecution of all suits, criminal and civil, in which the crown was interested. He had authority to institute proceedings to abate public nuisances, affecting public safety and convenience, to control and manage all litigation on behalf of the state, and to intervene in all actions which were of concern to the general public. Capitol Stages, Inc. v. State ex rel. Hewitt, District Attorney, 157 Miss. 576, 128 So. 759 (1930) held that the office of district attorney was carved out of the office of attorney general, and made an independent one.

Accordingly, the cases have held that the powers of district attorneys are statutory, not common law, and they cannot encroach upon the powers of the attorney general. A district attorney has no authority to represent the state in litigation outside counties of their district, or to represent the state in litigation in their district where the subject matter is of statewide interest, as distinguished from local interest. These principles have been reiterated in a number of cases. Kennington-Saenger Theaters, Inc. v. State ex rel. District Attorney, 196 Miss. 841, 18 So. 2d 483 (1944); Dunn Const. Co. v. Craig, 191 Miss. 682, 2 So. 2d 166 (1941); Graves v. Hinds County, 166 Miss. 89, 145 So. 900 (1933); State v. Key, 93 Miss. 115, 46 So. 75 (1908).

Among other relevant statutes, the district attorney is given the power, with the approval of the attorney general, to institute and prosecute ''all persons indebted to the state or any county within his district.'' Miss. Code Ann. § 3923 (1956). The district attorney has the duty to appear in the circuit courts and prosecute for the state in his district all civil cases in

which the state or any county within his district may be interested. Code § 3920. Members of the board of supervisors are required to execute a bond with sureties, which bond is a security for any illegal act of such member, "and recovery thereon may be had by the county for any injury by such illegal act of such member; . . ." Code § 2872.

The instant case includes charges covering a multitude of activities, responsibilities and duties of the Board of Supervisors of Adams County. It involves the legality of the actions of these parties under the general statutes of the state, dealing with the authorities of boards of supervisors. Moreover, there is no statute prohibiting the attorney general from bringing a suit of this nature. The fact that the district attorney, with the consent of the attorney general, may bring a suit of this type, does not limit or exclude the latter's general authority. See People v. Gibson, 53 Colo. 231, 125 Pac. 531 (1912); 7 Am. Jur. 2d *Attorney General* § 10, p. 14 (1963).

The instant question pertains to the relationship between the offices of attorney general and district attorney, and the breadth of the former's powers. The attorney general, a constitutional officer, determined that the interests of the people of the state required him to bring this suit as one of the complainants on behalf of the state. He apparently concluded that this was a matter of statewide concern. We think that the issues are of this nature, pertaining as they do to the duties and powers of boards of supervisors, not only in Adams County but in all of the eighty-two counties which are subdivisions of the state. See 7 Am. Jur. 2d *Attorney General* § 10 (1963). The common law powers and duties of the attorney general, as chief law officer of the state, authorized this action. The attorney general is clothed with all the common law powers of the office, except insofar as they have been expressly restricted or modi-

fied by statute or the state constitution, and neither limitation exists here. See *Id.*, § 6.

## III.

The next question is whether this cause of action survived after death of two supervisors. Mrs. Betty Godbold Carter and James H. Carter are joint executors of the estate of Hillary W. Carter, deceased. The suit was based upon an audit of the books and financial affairs of the Board of Supervisors of Adams County from January 1952 through January 1957. Carter had been a member of the board for many years, and during the audit period was a member from January 1, 1952, until his death on August 16, 1956. This suit was filed against these executors and the surety on the official bond of Carter, slightly more than a year after his death. Administration of the estate was pending at the time the suit was filed. The executors and the surety filed general demurrers to the bill, which were sustained.

Fielding Merwyn McGehee had for many years been a member of the board of supervisors, and during the audit period was a member from January 1, 1952, until his death on March 7, 1953. His will, duly probated, named his wife as executrix. She administered the estate, and it was closed by decree of the chancery court on October 30, 1953, when the executrix delivered unto herself, as the sole devisee and legatee of McGehee, the remaining assets of the estate. This suit was filed more than four years after his death, and almost four years after his estate had been closed. The general demurrers of Mrs. McGehee and the surety company to the bill were sustained.

These appellees take the position that the action against these two men is based upon a "penal statute" so it did not survive, but was extinguished by their deaths. This involves the question of whether the statute is penal, thus precluding the state's cause of action

against the successors of these two men and their surety companies from surviving. Mississippi Code Annotated section 2944 (1956) states:

> If a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally for such sum of money, to be recovered by suit in the name of the county, or in the name of any person who is a taxpayer who will sue for the use of the county, and who shall be liable for costs in such case.

██ ██ Mississippi Code Annotated section 609 (1956) provides:

> Executors, administrators, and temporary administrators may commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted. And they shall also be liable to be sued in any court in any personal action which might have been maintained against the deceased.

"Any personal action" includes an action for recovery of real or personal property, for breach of contract, and for injury to person or property. Scott v. Munn, 245 Miss. 120, 146 So. 2d 564 (1962). It is argued that section 609 is "in derogation of the common law", and must be strictly construed. McNeely v. Natchez, 148 Miss. 268, 114 So. 484 (1927). ██ ██ However, a corollary of this rule of construction is that in applying a statute, the court will seek to determine the legislative intent and purposes. This objective is applicable to construction of section 609.

██ ██ The basis of this suit is section 2944, which makes members of a board of supervisors personally liable for appropriating money to an object not authorized by law, if they did not vote against the appropriation. We think the statute is remedial and not penal in nature, since it creates a remedy for the state against super-

visors who either voted for or did not vote against an appropriation of county funds not authorized by law. ██ A remedial statute is defined as one "that intends to afford a private remedy to a person injured by the wrongful act. That is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good." The test is whether it primarily seeks to impose an arbitrary, deterring punishment "upon any who might commit a wrong against the public by a violation of the requirements of the statute, or whether the purpose is to measure and define the damages which may accrue to an individual or class of individuals, as just and reasonable compensation for a possible loss having a causal connection with a breach of the legal obligation owing under the statute to such individual or class." Black's Law Dictionary 1457 (4th ed. 1951).

Thus remedial statutes are those made to supply defects in the common law. Some are classified as enlarging statutes, by which the common law is made more comprehensive and extended than it was before. *Id.* at 1457. Beginning with Paxton v. Baum, 59 Miss. 531 (1882), the cases interpreting and applying section 2944 have indicated that the Court considers the statute as remedial and not penal. Also relevant is Code section 2872, which requires supervisors to make a bond as security "for any illegal act of such member", and authorizes recovery by the county or a taxpayer in suit on the bond. See Miss. Code Ann. § 4033 (1956) (conditions of bond); Cf. Paine v. Matthews, 213 Miss. 506, 57 So. 2d 148 (1952) (where alderman made no appropriation, but tried to ratify it).

 ██ Public funds are a public trust. The members of a board of supervisors manage and appropriate trust funds belonging to the public — the county and state. Appropriation of such moneys to an object not authorized by law is a violation of the fiduciary responsibilities of

the board of supervisors. The legislature by enactment of section 2944 authorized a personal action against members of a board of supervisors who should wrongfully appropriate such public trust funds. No penalty is provided by the act. The recovery is compensatory, to the county and the state, measured by the amount of the money appropriated to the object not authorized by law.

Metzger v. Joseph, 111 Miss. 385, 71 So. 645 (1916) is analogous. The directors of an insolvent bank approved and distributed a dividend. The bank's receiver brought a suit in equity to recover the illegal dividend, under a statute making directors personally liable. Their contention, that the act was penal and therefore was barred by the one-year limitation on penal statutes, was rejected. The Court held that the trend of modern authority, and the correct view, was that the act was remedial as to creditors and not penal, although it would be strictly construed according to its terms. It was a private obligation, imposed by the legislature, partly for the purpose of inducing directors to perform their prescribed duties. The opinion contains a careful analysis of remedial statutes.

*Metzger* was followed in Wilkinson v. Goza, 165 Miss. 38, 145 So. 91 (1932). Insured sued an insurance agent under a statute making the latter personally liable for writing an insurance contract where the insuring company was not authorized to do business in the state. Rejecting a contention that the one-year limitation for suits on penalties was applicable, the Court said that this statute was remedial as to the insured, who had been led by the unlawful act of the agent to make a contract with an unqualified foreign insurance company. In accord with the reasoning of *Metzger* and *Wilkinson* is the general rule that a cause of action against an officer or director of a corporation may survive his death. 1 C.J.S. *Abatement* § 156 (1936).

Harbin v. O'Rear, 219 Ala. 173, 121 So. 547 (1929), is analogous to the present case. The Alabama statute provided for the survival of "all personal actions," with exceptions. The sheriff seized the property of a defendant in attachment, and then redelivered it to him without receiving the required statutory bond. The injured plaintiff sued the sheriff and his surety company, and after suit was brought, the sheriff died. It was held the cause of action survived his death, and should have been permitted to be revived against his personal representative. The Court said:

"It cannot be successfully maintained that the official bond of an officer lives in liability only so long as the official is in life. If this construction be given, an unwritten condition is introduced into the official bond stronger than its written conditions, and the purpose and extent of the statute broadening the common-law rule of liability of official bonds are rendered nugatory. . . . Any other construction of our statute of revivor, and that of the duty and obligations under official bonds, would defeat the legislative purpose in such matters and seriously impair the security sought to be afforded under required official bonds. (219 Ala. at 175, 121 So. at 548)

In summary, the chancery court erred in sustaining the demurrers to the bill of complaint of the executors and of the sole devisee and legatee of the two deceased supervisors. This cause of action survived their deaths.

The decrees dismissing the state auditor and attorney general as parties complainant, and the orders sustaining demurrers to the bill of complaint are reversed, and the cause is remanded for findings of fact and a final decree on the merits. Since the trial court did not pass upon the factual issues, we do not consider them. On remand the court will decide the case on the basis of

the record already made and such further pleadings and evidence if any as may properly be presented to it.

Reversed and remanded.

All Justices concur.

### ON SUGGESTION OF ERROR

BRADY, J.:

■■ ■■ The executors of the estate of Hillary W. Carter, deceased, have filed a suggestion of error, which we overrule. State v. Warren, 180 So. 2d 293 (Miss. 1965). Paine v. Matthews, 213 Miss. 506, 57 So. 2d 148 (1952), cited in our original opinion, does not affect the conclusion that Mississippi Code Annotated section 2944 (1956), upon which this suit is based, is not a penal statute. *Paine* simply held that the mayor and councilmen made no appropriation, but attempted to ratify unlawful expenditures already made by employees, and an illegal contract, being void, was not susceptible of ratification. Thus the nature of the statute was not an issue and was not so considered in that opinion. The reference thereto in *Paine* was unnecessary to the decision.

However, on a subsidiary point, we think the suggestion of error by Mrs. Clara Reber McGehee should be sustained. She was sued originally as executrix of the estate of her husband. He died on March 7, 1953, and his estate was administered and finally closed within about seven and one-half months after his death, on October 30, 1953. On February 20, 1958, by agreement of the parties, the suit was dismissed as to Mrs. McGehee in her capacity as executrix. The complainants' motion to amend was sustained, and Mrs. McGehee was made defendant as the widow and sole devisee and legatee under the will of decedent. The court thereafter sustained her demurrer to the bill.

██ █ Mississippi Code Annotated section 609 (1956) provides that: "Executors, administrators, and temporary administrators" are liable to be sued in any "personal action." This was a personal action which survived. ██ █ Code section 525 recognizes the right of a creditor to obtain administration, and the holder of a claim against an estate is a creditor. Great Southern Box Co. v. Barrett, 231 Miss. 101, 94 So. 2d 912 (1957).

In Powell v. Buchanan, 245 Miss. 4, 147 So. 2d 110 (1962), the petitioner, who had a claim against the estate of a deceased for injuries sustained in an automobile accident, filed a petition to reopen the account of the administratrix in the estate. Previously the estate had been closed shortly after expiration of six months from the date of letters testamentary, during which a suit cannot be brought against an executrix. Miss. Code Ann. § 612 (1956). It was held that the chancellor should have reappointed the widow as administratrix, or some other person as administrator, if she did not desire to serve, under section 525. It was said that the right of petitioner could not be defeated by an early termination of the estate. He had the right to present his claim against a representative of the estate.

In the instant case, the State, as an alleged creditor of the estate, should have followed the procedure outlined in *Powell,* by requesting the trial court to appoint either the widow, if she desired to serve, or another person as administrator of the estate, and by making that administrator a party defendant to its action.

██ █ Mrs. McGehee's liability, if any, is derivative only to her husband's estate, and to the maximum extent only of the amount of her inheritance from that estate. Code section 609, the survival statute, does not authorize the State to sue the widow of the deceased supervisor in her individual capacity, in a suit to establish liability of the estate. Hill v. James, 175 So. 2d 176 (Miss. 1965). Hence the suggestion of error is sustained in part as to

appellee, Mrs. Clara Reber McGehee, and, as to her only, the decree of the chancery court is affirmed.

In all other respects, the suggestion of error is overruled.

Suggestion of error overruled in part and sustained in part, and decree of chancery court affirmed as to Mrs. Clara Reber McGehee.

All Justices concur.