# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-IA-00402-SCT

*HARVEY WILLIAMS, JR. a/k/a SMOKIE a/k/a*
*HARVEY WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/2013 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | CHARLES RICHARD MULLINS |
| | MERRIDA COXWELL |
| | MARVIN LAWAYNE SANDERS |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | CHARLES RICHARD MULLINS |
| | MERRIDA COXWELL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: HAROLD EDWARD PIZZETTA, III |
| | MARY JO WOODS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 12/11/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Following this Court's reversal and remand of the murder conviction of Harvey Williams, Robert Shuler Smith, the Hinds County District Attorney, sought an order of *nolle prosequi*, which was granted by the circuit court. Two days later, and without notice to the accused, the judge sought to vacate his previously entered *nolle prosequi* order, "recuse" the district attorney, and transfer the case to the Mississippi Attorney General's Office. A second

circuit court judge found that the order of *nolle prosequi* was not subject to recision, but appointed the Attorney General's Office as a special prosecutor in the place of the local district attorney, merely because the duly elected and serving local prosecutor had exercised his discretion not to prosecute Williams. The involuntary disqualification of the local district attorney and the substitution of the Office of the Attorney General, over the objection of the local district attorney, are wholly unsupported by any constitutional, common law, or statutory authority of the State of Mississippi.

## FACTS AND PROCEDURAL HISTORY

¶2.   Following the shooting death of Calvin Younger outside a Jackson, Mississippi, nightclub in 2003, Harvey Williams was indicted for murder. The case proceeded to trial in 2007, prosecuted by the then-Hinds County District Attorney Faye Peterson. A jury found Williams guilty of murder, and the Honorable Breland Hilburn, Circuit Judge, sentenced Williams to life in the custody of the Mississippi Department of Corrections. The Court of Appeals affirmed Williams's conviction and sentence. *Williams v. State*, 54 So. 3d 253 (Miss. Ct. App. 2010).  This Court granted Williams's petition for writ of *certiorari* and, upon review, reversed his conviction and remanded the case for a new trial. *Williams v. State*, 54 So. 3d 212, 216 (Miss. 2011). We found that Williams's defense was prejudiced by the exclusion of testimony from a witness who would have testified that he had seen the decedent with a gun earlier on the evening of the shooting. *Id.*

¶3.   Following remand, Hinds County District Attorney Robert Shuler Smith sought an order of *nolle prosequi* based on "new evidence" indicating "that the defendant, Harvey Williams, may have acted in self-defense." Judge Hilburn, who had presided over Williams's

2

trial, signed an order on June 13, 2011, granting the State's *nolle prosequi* motion. Two days later, however, on June 15, 2011, Judge Hilburn wrote "Withdrawal of Order" directly upon his previously entered *nolle prosequi* order, and "the Court find[s] that the above order of Nolle Prosequi was erroneously entered by the Court. The Order of Nolle Prosequi is hereby withdrawn."[1]

¶4.     Nine months later, on March 13, 2012, Judge Hilburn signed the following "Order of Recusal":

> IT APPEARING that the District Attorney in and for the Seventh Circuit Court District, State of Mississippi, and the staff of the District Attorney's Office, should recuse itself from prosecuting the above-styled and numbered cause, and in support thereof, would show unto the court the following facts, to-wit:
>
>> (1) The District Attorney's Office is recusing itself from this matter so this case can be handled by the Attorneys that originally prosecuted this matter.
>>
>> (2) The Attorneys that originally prosecuted this matter now work in the Mississippi Attorney General's Office.
>
> IT IS THEREFORE[] ORDERED AND ADJUDGED that the District Attorney in and for the Seventh Circuit Court District, State of Mississippi, and the staff of the District Attorney's Office, should recuse itself from prosecuting the above-styled and numbered cause for the reasons stated above and this matter will be transferred to the Mississippi Attorney General's Office.

On March 14, 2012, Judge Hilburn entered a second order appointing the Division of Public Integrity of the Mississippi Office of the Attorney General as special prosecutor.

---

[1]No notice was provided Williams or his counsel that Judge Hilburn's June 13, 2011, order of *nolle prosequi* had been withdrawn two days after its entry. At a hearing before Judge Hilburn ten months later, on April 5, 2012, Williams's counsel related that he had received no notice of the withdrawal.

¶5.     On September 10, 2012, Williams filed a motion to dismiss the case, claiming that Judge Hilburn's original *nolle prosequi* order effectively brought the case to an end and that the charges could not be revived by the judge. Williams contended that any orders entered after the order of *nolle prosequi* had been entered were null and void, including the order of recusal of the Hinds County District Attorney and the order appointing the Office of the Attorney General as special prosecutor. Initially, the case was reassigned to Circuit Judge William Gowan, but Judge Gowan recused. The case then was assigned to Circuit Judge Jeff Weill, who conducted a hearing on October 29, 2012.

¶6.     At the hearing before Judge Weill, Special Assistant Attorney General Marvin Sanders conceded that Judge Hilburn had no authority to rescind the order of *nolle prosequi*. Sanders did maintain, however, that the Office of the Attorney General is vested with constitutional, common law, and  statutory authority which entitle it to prosecute the case. District Attorney Smith testified that he had decided, in his discretion as the elected Hinds County District Attorney, to seek a *nolle prosequi* of the case against Williams. He expressed his continuing objection to the intervention of the attorney general "in cases where I have jurisdiction as the elected district attorney."

¶7.     On February 14, 2013, Judge Weill entered an order finding that, once the order of *nolle prosequi* had been signed by Judge Hilburn, the case was at an end. He therefore held "that the subject cause number shall be dismissed, as the same was nolle prossed on June 13, 2011." However, Judge Weill found that, because the Hinds County District Attorney did not intend to prosecute Williams, the Office of the Attorney General should be appointed as

4

special prosecutor. Judge Weill continued that the Office of the Attorney General "is permitted to pursue future prosecution of this Defendant, in its discretion."

¶8. Williams filed a Petition for Interlocutory Appeal in this Court on March 7, 2013. On April 1, 2013, a panel of this Court ordered that Judge Weill, the attorney general, and the Hinds County District Attorney's Office file responses addressing the following issues:

> (1) What authority, if any, permits a trial judge to appoint the Attorney General of the State of Mississippi as special prosecutor under the circumstances presented in this case?
>
> (2) What authority, if any, permits the Attorney General of the State of Mississippi to serve as special prosecutor under the circumstances presented in this case?
>
> (3) Do the Office of the Attorney General of the State of Mississippi and the Hinds County District Attorney's Office belong to the executive or the judicial branch of government?

Having received a response from each of the entities listed above, the panel, on May 28, 2014, granted Williams's petition for interlocutory appeal and stayed prosecution of Williams related to the charges for which he previously had been indicted.

¶9. On interlocutory appeal, Williams raises the following issues:

> DID THE HINDS COUNTY CIRCUIT COURT JUDGE HAVE THE AUTHORITY AND/OR JURISDIC[TION] TO APPOINT THE MISSISSIPPI ATTORNEY GENERAL AS SPECIAL PROSECUTOR? IN THE ALTERNATIVE DID THE CIRCUIT COURT JUDGE VIOLATE THE SEPARATION OF POWERS DOCTRINE BY APPOINTING THE MISSISSIPPI ATTORNEY GENERAL AS SPECIAL PROSECUTOR AFTER THE CASE WAS DISMISSED BY *NOLLE PROSEQUI*?

We limit interlocutory review to the first question presented, finding it dispositive of the matter before us. We divide the question presented into the following issues:

5

I.       Whether the Constitution and/or common law of the State of Mississippi authorize the intervention of the Office of the Attorney General in a criminal prosecution in which the local district attorney opposes such interference.

II.      Whether the statutes of the State of Mississippi authorize the intervention of the Office of the Attorney General in a criminal prosecution in which the local district attorney opposes such interference.

## DISCUSSION

¶10.    Justice Pierce analyzes whether the circuit court is vested with authority to rescind orders of *nolle prosequi* after entry. But this issue is not before the Court. Judge Weill acknowledged in his order of February 14, 2013, that the case had been *nolle prossed* by Judge Hilburn's order of June 15, 2011, and was therefore finally dismissed. Marvin Sanders of the Office of the Attorney General conceded this at the October 29, 2012, hearing before Judge Weill. The issue was not raised on appeal, and we decline to address it. We proceed to address only the issue before this Court.

**I.       Whether the Constitution and/or common law of the State of Mississippi authorize the intervention of the Office of the Attorney General in a criminal prosecution in which the local district attorney opposes such interference.**

¶11.    Neither the Constitution nor any case law authorized Judge Hilburn's or Judge Weill's orders appointing the Office of the Attorney General as special prosecutor to prosecute the case against Williams, where the local district attorney, in his discretion, had made the decision not to prosecute.

¶12.    The Constitution of the State of Mississippi provides for an Attorney General:

There shall be an Attorney General elected at the same time and in the same manner as the Governor is elected, whose term of office shall be four years and

6

whose compensation shall be fixed by law. The qualifications for the Attorney General shall be the same as herein prescribed for judges of the circuit and chancery courts.

Miss. Const. art. 6, § 173. According to this Court, "[t]he creation of the office of Attorney General by the Constitution vested him with these common law duties, which he had previously exercised as chief law officer of the realm." *Kennington-Saenger Theatres v. State ex rel. Dist. Attorney*, 196 Miss. 841, 18 So. 2d 483, 486 (1944). With regard to the powers of the attorney general at common law, this Court has held that:

> At common law the duties of the attorney general, as chief officer of a realm, were numerous and varied. He was chief legal adviser of the crown, was entrusted with the management of all legal affairs, and prosecution of all suits, criminal and civil, in which the crown was interested. He had authority to institute proceedings to abate public nuisances, affecting public safety and convenience, to control and manage all litigation on behalf of the state, and to intervene in all actions which were of concern to the general public.

*State ex rel. Allain v. Miss. Pub. Serv. Comm'n*, 418 So. 2d 779, 781 (Miss. 1982) (quoting *State ex rel. Patterson v. Warren*, 254 Miss. 293, 307, 180 So. 2d 293, 299 (1965)).

¶13.    Justice Coleman takes the position that the Constitution and broad common law language authorize the attorney general "to initiate or intervene should he so choose." But neither Mississippi's Constitution—silent with regard to the powers or duties of the attorney general—nor the common law authorizes the attorney general to usurp or encroach upon the constitutional or the statutory power of the local district attorney in a criminal case where the attorney general's assistance is not requested by the district attorney, and is in fact opposed by the district attorney. Indeed, with regard to district attorneys, the Constitution provides: "[a] district attorney for each circuit court district shall be selected in the manner provided by law, whose term of office shall be four years, *whose duties shall be prescribed by law*, and

7

whose compensation shall be a fixed salary." Miss. Const. art 6, § 174 (emphasis added). "[T]he powers of district attorneys are statutory, not common law, and they cannot encroach upon the powers of the attorney general." *Warren*, 180 So. 2d at 299. This Court has clarified: "A district attorney has no authority to represent the state in litigation outside counties of their district, or to represent the state in litigation in their district where the subject matter is of statewide interest, as distinguished from local interest." *Id.* (citations omitted). We find no reason, or evidence in the record, why Williams's murder prosecution could be considered by the attorney general to be any more a matter of statewide interest, as distinguished from local interest, than any other murder case.

¶14.    The Office of the Attorney General cites the case of *Bell v. State*, in which the defendant challenged the authority of the attorney general to call the grand jury and to present charges to it in the absence of a request from the local district attorney to do so, in support of its argument that the common law authorizes the attorney general to prosecute any case it chooses. *Bell v. State*, 678 So. 2d 994, 996 (Miss. 1996).  But in that case, unlike in the present one, no evidence was adduced that the local district attorney *opposed* the involvement of the attorney general. Here, District Attorney Smith positively testified that he was opposed to the involvement of the attorney general in a case in which he had jurisdiction as the elected district attorney.

¶15.    This Court has recognized that "[t]here was no such office as district attorney known to the common law." *Capitol Stages v. State*, 157 Miss. 576, 128 So. 759, 763 (1930). The Court continued:

8

The office of district attorney, unlike that of Attorney General, is of modern origin, its duties are prescribed by statute; the civil and criminal business of the state, which once pertained to the office of Attorney General, has been by the Legislature divided between the two offices for convenience. The office of district attorney has been carved out of the office of Attorney General, and made *an independent office*. The Attorney General may advise the district attorneys, as he does other offices, in his capacity as chief law officer of the state. Nevertheless the two offices are separate and distinct. *The powers of the district attorneys can neither be increased nor diminished by the Attorney General.*

*Id.* (emphasis added). According to the common law of this State, the attorney general may advise the district attorney, but he neither can increase nor diminish the statutory power of the district attorney. Intervention of the attorney general into the independent discretion of a local district attorney regarding whether or not to prosecute a criminal case constitutes an impermissible diminution of the statutory power of the district attorney. *See* Miss. Code Ann. § 25-31-11(1) (Rev. 2010) ("It shall be the duty of the district attorney to represent the state in all matters coming before the grand juries of the counties within his district and to appear in the circuit courts and prosecute for the state in his district *all criminal prosecutions* and all civil cases in which the state or any county within his district may be interested . . . .")) (Emphasis added.)

¶16.    Both the attorney general and the district attorney are constitutional officers of the State of Mississippi. But the Mississippi Attorney General is not the local district attorney's boss, as in the federal system, where the United States Attorney General is the superior of the U.S. Attorneys in the federal court districts. *See* 28 U.S.C. § 519 (2012) ("[T]he Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys . . .

9

in the discharge of their respective duties.") Both the United States Attorney General and the United States Attorneys are appointed by the President and serve at his will and pleasure. *See* 28 U.S.C. § 503 (2012), 28 U.S.C. § 541 (2012). The United States Attorney General can override, or trump, the prosecutorial decisions of a local United States Attorney. *See* 28 U.S.C. § 519 (2012). The Mississippi attorney general is without authority to direct, control, or override the official actions of a local district attorney and has no authority over him or her.

¶17. Neither Mississippi's Constitution nor its common law permits the involuntarily disqualification of a duly elected district attorney from the lawful performance of his duty and the substitution of the attorney general in the district attorney's place and stead in a case in which no legal grounds for the district attorney's disqualification exists.

> **II.** **Whether the statutes of the State of Mississippi authorize the intervention of the Office of the Attorney General in a criminal prosecution in which the local district attorney opposes such interference.**

¶18. No statute authorized the Office of the Attorney General to prosecute the instant case in the place and stead of the district attorney, and neither Judge Hilburn nor Judge Weill was authorized to appoint the attorney general, his office, or any division of his office, for that purpose.

¶19. Judge Weill found:

> At a hearing on the matter, the Hinds County District Attorney made clear his intentions not to prosecute this Defendant. The Court finds that the Attorney General's office is hereby appointed as a Special Prosecutor, and is permitted to pursue future prosecution of this Defendant, in its discretion.

10

Judge Weill cited Mississippi Code Section 7-5-1, which codifies the common law language that the attorney general is "the chief legal officer and advisor for the state, both civil and criminal, and is charged with *managing* all litigation on behalf of the state, *except as otherwise specifically provided by law. . . .* He shall have the *powers of the Attorney General at common law . . . .*" Miss. Code Ann. § 7-5-1 (Rev. 2014) (emphasis added). But that statute does not support the usurpation by the attorney general of the independent discretion over criminal prosecution which statutorily has been vested in local district attorneys. *See* Miss. Code Ann. § 25-31-11(1) (Rev. 2010) ("It shall be the duty of the district attorney to represent the state in all matters coming before the grand juries of the counties within his district and to appear in the circuit courts and prosecute for the state in his district *all criminal prosecutions* and all civil cases in which the state or any county within his district may be interested . . . .")) (emphasis added).

¶20. Only one statute authorizes intervention by the attorney general. Mississippi Code Section 7-5-53 provides:

> The Attorney General[2] shall, when required by public service or when directed by the Governor, in writing, repair in person, or by any regular or specially designated assistant, to any county or district in the state and *assist* the district attorney there in the discharge of his duties and in any prosecution against a state officer, and shall have the same right as the district attorney to enter the grand jury room while the grand jury is in session and to perform such services with reference to the work of the grand jury as the district attorney is authorized by law to perform.

---

[2] This statute refers to the attorney general himself or "any regular or specially designated assistant," and not more broadly to *the Office* of the Attorney General. Miss. Code Ann. § 7-5-53 (Rev. 2014). "Offices" cannot be appointed to assist district attorneys. Only the attorney general and his or her assistants are eligible. *See* Miss. Code Ann. § 25-31-21 (Rev. 2010).

11

Miss. Code Ann. § 7-5-53 (Rev. 2014) (emphasis added). The operative word in Section 7-5-53 is but one: *assist*. According to the statute's plain language, the attorney general may *assist* a local district attorney in the discharge of his or her duties. Here, however, Robert Shuler Smith, the Hinds County District Attorney,[3] never sought the assistance of the attorney general; and, indeed, at the hearing before Judge Weill, he testified that he had opposed the attorney general's involvement. The following colloquy occurred between District Attorney Smith and Marvin Sanders of the Office of the Attorney General:

> Q: [Mr. Sanders] . . . is it your opinion that your office wants to prosecute the case?
>
> A: [Mr. Smith] We were already over that case.
>
> Q: You're over it? So you don't want to – you don't want it – to prosecute it?
>
> A: (No response.)
>
> Q: No?
>
> A: I mean, the case has already been disposed of.
>
> Q: Well, that's why we're here today. That's – Judge Weill is going to make the decision on what happens to this case.
>
> A: Right.
>
> Q: Which I'm trying to determine if the attorney general's office wants to proceed with prosecuting the case. Do you object to our office prosecuting the case?
>
> A: I object to the attorney general's office not contacting the district attorney –
>
> Q: Regarding what?

---

[3] The Seventh Circuit Court District is now comprised of Hinds County only.

12

> A: – and – getting involved in cases where I have jurisdiction as the elected district attorney.

¶21. The statute permitting the attorney general to become involved in local prosecutions in no way contemplates the present situation. Under the applicable statute, only two scenarios permit the involvement of the attorney general: (1) when required by public service, or (2) when directed by the governor, in writing. If one of those applies, the attorney general is to *assist* the local district attorney in the discharge of his or her duties. Here, District Attorney Smith did not request or require *assistance*; he decided, in his discretion, not to prosecute this case. That decision duly was ratified by order of a circuit judge, namely, Judge Hilburn.

¶22. The record does not support any finding, and Judge Hilburn never found, that the attorney general's assistance was "required by the public service." The Governor did not, in writing, direct the attorney general to prosecute the Williams case. Instead, Judge Hilburn, for no valid reason, signed an order *sua sponte* recusing or disqualifying District Attorney Smith from a case over which he lawfully had exercised  prosecutorial discretion on behalf of the State. Consistent with the duties and authority of his office, District Attorney Smith had sought a *nolle prosequi*, which Judge Hilburn, in due course, granted on June 13, 2011. Mississippi Code Section 7-5-53 does not authorize the intervention of the attorney general into a matter statutorily relegated to the discretion of a local district attorney where that official has decided not to prosecute and, in fact, objects to the involvement of the attorney general.

¶23. Mississippi Code Section 25-31-21 provides for the appointment of a district attorney *pro tempore*, but in specific, limited circumstances:

13

> If, at the time of impaneling the grand jury in any circuit court, the district attorney be *absent* or *unable to perform his duties* or, if after impaneling of the grand jury, the district attorney be absent or unable to perform his duties or be *disqualified*, the court shall forthwith appoint some attorney at law to act for the state in the place of the district attorney during his absence or inability or disqualification, and the person appointed shall have the power to discharge all the duties of the office during the absence or inability or disqualification of the district attorney . . . .

Miss. Code Ann. § 25-31-21 (Rev. 2010). The statute by its plain text provides three situations in which a district attorney *pro tempore* shall be appointed: the district attorney is absent, the district attorney is unable to perform his duties, or the district attorney is disqualified.

¶24.    Judge Hilburn stated that the district attorney "should recuse," but articulated no lawful reason that he should, saying only that the case ought to "be handled by the Attorneys that originally prosecuted this matter." With utmost respect to Judge Hilburn, his order fails to articulate or analyze any legal reason for the "recusal" of the Hinds County District Attorney. If the district attorney or his duly qualified assistants were neither absent, unable to perform, nor disqualified, then Judge Hilburn was without authority to order the "recusal" of the district attorney or his office. The record is wholly void of any of the specified statutory bases for the appointment of a district attorney *pro tempore*.

¶25.    It is true that the March 13, 2012, order of recusal was entered with the acquiescence of an assistant district attorney who signified his approval of it; but District Attorney Smith, testifying under oath, disputed at the hearing before Judge Weill that he had authorized the recusal of himself or his office from the Williams case. The following colloquy took place at the hearing before Circuit Judge Weill:

Q: [Mr. Sanders] Okay. Your office recused yourself. Scott Rogillio, assistant district attorney, is he – does he have the authority to recuse the district attorney's office from cases?

A: [Mr. Smith] Well if there is a reason to recuse.

Q: Well, I'm asking does he have the authority to recuse your office from the case. Were you saying – did – then you're saying he exceeded his authority by recusing your office in this case?

A: If there is an articulable reason to recuse, then I would have – I would hope that someone would bring that to my attention.

Q: Okay. But you're aware that – you said that the AG's office is overstepping its bounds and involving yourself in the case, but your office recused itself and the judge appointed us. So the AG's office is not stepping on your authority, is it? We're not involving ourselves. Your office recused itself and the judge appointed us; isn't that correct?

A: I'm not sure if it was a proper recusal and I'm not sure if it was a proper appointment.

But when asked "[d]id you, as the publicly elected district attorney, approve or consent to an order recusing your office?," District Attorney Smith responded: "I did not and I cannot think of any recusal at this time, but this appears to be signed by an assistant district attorney. I don't know if he set forth – sets for the reasons for the recusal . . . ." No motion ever was filed by the Hinds County District Attorney's Office setting forth any grounds for its disqualification or recusal from the Williams case. The record is clear that the district attorney regarded the Williams case as no longer extant, once Judge Hilburn had signed the order of *nolle prosequi*.

¶26. In the orders appointing the Office of the Attorney as special prosecutor of Williams's case, neither Judge Hilburn nor Judge Weill articulated any statutory authority permitting such appointment. Indeed, there was none to be found.

15

**CONCLUSION**

¶27. Mississippi law does not permit a trial court to disqualify a duly elected and serving district attorney and replace him with the attorney general where the district attorney has decided, in the lawful exercise of his discretion, not to prosecute a criminal case. The attempted appointments of the Attorney General of Mississippi, or members of his staff, in the place and stead of the District Attorney of the Seventh Circuit Court District is reversed and rendered. This Court's stay of the criminal prosecution against Williams is lifted.

¶28. **REVERSED AND RENDERED.**

**DICKINSON, P.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND RANDOLPH, P.J.; COLEMAN, J., JOINS IN PART. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH, P.J., AND PIERCE, J.**

**PIERCE, JUSTICE, DISSENTING:**

¶29. I find that Cause Number 03-0-969 remains viable, and Judge Hilburn's order transferring the case to the Attorney General's Office is valid. Judge Hilburn clearly had the authority and discretion in this instance to rescind his *nolle prosequi* order for Cause Number 03-0-969 two days after issuing the order during the same term of court. Judge Hilburn likewise had the authority to transfer the case to the Attorney's General Office once the Hinds County District Attorney thereafter let it be known that his office would not act on the matter (as illustrated by the record), based upon what can only be discerned as the district attorney's misapprehension of this Court's decision in *Williams v. State*, 54 So. 3d 212 (Miss. 2011). For these reasons, as will be explained, I dissent.

16

¶30. At the outset, the majority finds the question as to whether Judge Hilburn had the authority to rescind his previous *nolle prosequi* order, not before us. Respectfully, that is the elephant in the room. And the majority practically embraces it, while pretending it is not there. Indeed, the majority's decision, and entire analysis in support thereof, is premised on the notion that Judge Hilburn did not have the authority to appoint the Attorney's General Office because Judge Hilburn had entered a *nolle prosequi* order. But, as the record plainly illustrates, Judge Hilburn appointed the Attorney General's Office, after he rescinded the previous *nolle prosequi* order and after District Attorney Smith then declined to prosecute the case.[4] Judge Hilburn, as he testified below before Judge Weill, proceeded accordingly because Judge Hilburn believed he had the authority and the duty to do so. Judge Weill placed error in Judge Hilburn's decision to rescind the *nolle prosequi* because Judge Weill believed that Judge Hilburn did not have such authority. Judge Weill, however, found that Judge Hilburn had authority under the state constitution to appoint the Attorney's General's Office as a special prosecutor in this case. As a matter of common judicial sense and standards, we must first address who was correct on the recision question before reaching any constitutional question put before us. This is a fundamental rule of this Court. *See Ferguson v. Watkins*, 448 So. 2d 271, 285 (Miss. 1984) ("Our practice is to avoid reaching

---

[4] To be clear, Judge Hilburn testified before Judge Weill that he rescinded the *nolle prosequi* order, drafted by the District Attorney's Office, after Judge Hilburn realized there were statements made in the order that were "absolutely untrue." Judge Hilburn then went to the District Attorney's office and told him he had withdrawn the order. According to Judge Hilburn, District Attorney Smith said he was not going to prosecute the case. Judge Hilburn then told District Attorney Smith that the Attorney General's Office had expressed a desire to prosecute the case. To which District Attorney Smith replied, "I don't care."

17

constitutional questions if a dispositive non-constitutional ground is available.") (citation omitted).

¶31. The district attorney is an important official, but the people, through their representatives in the Legislature, have not placed the fate of efforts to maintain law and order entirely in that official's hands. Where public interest is involved, it is the duty of the court to consider those interests in determining whether or not to *nolle prosequi* (or dismiss) an action. Mississippi Code Section 99-15-53 envisages this duty, and the majority fails to take both into consideration.

¶32. Section 99-15-53, which the majority fails to mention, states in part: "A district attorney, or other prosecuting attorney, shall not compromise any cause or enter a *nolle prosequi* either before or after indictment found, without consent of the court." This is the practice in the majority of jurisdictions and is a departure from the common law, where the power to dismiss a criminal charge, or enter a *nolle prosequi*, lies in the sole discretion of the prosecutor. *U.S. v. Cowan*, 524 F.2d 504, 509-10 (5th Cir. 1975). The purpose is two fold. One, the requirement protects the rights of a criminal defendant. *See, e.g., Rinaldi v. United States*, 434 U.S. 22, 29 n.15, 98 S. Ct. 81, 54 L. Ed. 2d 207 (1977) (*per curiam*) (speaking to the "leave of court" requirement prescribed by Federal Rule of Criminal Procedure 48(a) (counterpart to Section 99-15-53) which protects a defendant against prosecutorial harassment). Two, it protects the public interest. *Cowan*, 524 F.2d at 510-13 (Federal Rule of Civil Procedure 48(a)'s "leave of court" requirement also serves to protect the public interest in the fair administration of criminal justice).

¶33.   In speaking to the latter, *Cowan*, one of the leading authorities on Federal Rule 48(a)'s "leave of court" requirement, noted numerous state cases.  *Cowan* said, "state case law interpreting [modification of the common law] is sparse, but what there is of it consistently affirms the power and duty of the court to exercise discretion to grant or withhold leave to dismiss pending criminal prosecutions in the 'the public interest.'"  One of the state cases cited by *Cowan* was *Shipp v. State*, 215 Miss. 541, 61 So. 2d 329 (1952), abrogated on other grounds by *Addkison v. State*, 608 So. 2d 304 (Miss. 1992).  In *Shipp*, the district attorney moved the trial court for a *nolle prosequi* on a criminal defendant's indictment for larceny after the defendant was diagnosed before trial with schizophrenia by psychiatrists at the state hospital.  *Id*. at 546-47.  The trial court denied the *nolle prosequi* motion and ordered that the defendant be brought to trial.  The *Shipp* Court, citing Section 2566, Code of 1942 (predecessor to Section 99-15-53), did not question the trial court's decision to refuse the district attorney's *nolle prosequi* request.  *Id*. at 552.  Rather, the *Shipp* Court found reversible error in the trial court's refusal to try the issue of insanity preliminarily.  *Id*. at 551.

¶34.   Since *Shipp*, this Court has addressed Section 99-15-53's consent requirement in a limited number of cases, most of which involved plea agreements between the State and the defendant.  *See State v. Adams Cnty. Circuit Court*, 735 So. 2d 201, 204 (Miss. 1999) (holding that the trial court abused its discretion in denying the State leave to dismiss indictments after the defendants had relied detrimentally on plea agreement); *Moody v. State*, 716 So. 2d 592, 594 (Miss. 1998) (trial court abused its discretion in rejecting a plea agreement in murder case based on the trial court's desire that the defendant receive not less than the death penalty); *Edwards v. State*, 465 So. 2d 1085, 1086 (Miss. 1985) (trial court

19

abused its discretion in not quashing the defendant's indictment in light of the defendant's detrimental reliance on an agreement with the district attorney). The *Edwards* Court qualified its holding by reiterating that the trial court is not bound by every plea agreement because the plea agreement remains a function of the trial court's discretion. *Id*. at 1086.

¶35. Indeed, both *Shipp* and *Edwards* implicitly acknowledged there exists a public-interest concern, which the trial court has a duty to take into consideration in its decision to grant or deny a *nolle prosequi*.

¶36. This Court spoke to this charge in *State v. U.G.*, 726 So. 2d 151 (Miss. 1998). In that case, a fourteen-year old defendant had been indicted for armed robbery. *Id*. at 152. Upon motion from the defendant, the circuit court transferred the case to youth court. *Id*. at 153. The State appealed, and we reversed the circuit-court judgment for failure to consider the "public interest" before transferring the case. *Id*. at 156. We first cited Mississippi Code Section 43-21-159(3)(now Section 43-21-159(4)), which reads in part as follows:

> In any case wherein the defendant is a child as defined in this chapter and of which the circuit court has original jurisdiction, the circuit judge, upon a finding that it would be in the best interest of such child and in the interest of justice, may at any stage of the proceedings prior to the attachment of jeopardy transfer such proceedings to the youth court for further proceedings . . . .

Miss. Code Ann. § 43-21-159(4) (Rev. 2009). Next, we explained that, "[n]either the best interest of the child nor the 'interest of justice' overrides the other, but they can be separate interests and must be given full review by the circuit court." *U.G.*, 726 So. 2d at 155. We found that while the circuit court properly took into consideration the minor's best interest(s), the court "failed to properly address the issue of the 'interest of justice'–the public's interest." *Id*. at 155-56. We added that the trial court "is mandated by statute to consider

20

matters beyond the interest of the child[;] [t]he lower court must also review issues before it from an 'interest of justice' or public interest view point." *Id*. "The State has a duty to represent the public's interest in prosecuting violent criminals, no matter what their age." *Id*. at 156.

¶37. I see no distinction between the mandates of Section 43-21-159(4) and Section 99-15-53.

¶38. Here, according to the record, after we reversed and remanded William's conviction, the new district attorney, Robert Smith (who had succeeded the former Hinds County District Attorney Faye Peterson, who had prosecuted this case) discussed the case with his assistants. According to former Assistant District Attorney Keith Gates, who testified at the hearing before Judge Weill, Smith had debated whether, since the case had been "remanded with new evidence that [had] come in, whether the [S]upreme [C]ourt was saying it should be allowed in court." Gates said the only new evidence that he, Gates, knew about was that the bouncer at the club where the shooting had occurred had seen the decedent with a gun earlier that evening. Smith ultimately decided that the case should be *nolle prossed*. Gates said when he later presented the *nolle prosequi* motion to Judge Hilburn, Judge Hilburn was not happy about it and wanted to talk to Smith. Gates said he told Judge Hilburn that this is something that Judge Hilburn and Smith needed to talk about because he, Gates, was just relaying the message. Gates testified that Judge Hilburn signed the *nolle prosequi* order at that point.

¶39. Judge Hilburn testified at the hearing in front of Judge Weill, that a *nolle prosequi* order had been presented to him after Williams's conviction was reversed and remanded by this Court. Judge Hilburn could not recall how the order was presented, but he stated that

21

there was no procedure concerning the order. Judge Hilburn signed the order. As mentioned, after looking at the order later, Judge Hilburn realized that statements were made in the order that "were absolutely untrue" with regard to exhibits containing affidavits from witnesses whom Judge Hilburn had never seen. So Judge Hilburn found that the *nolle prosequi* order was not correct, and he withdrew it. Judge Hilburn testified that, because the term of court had not yet ended, he believed that he had the authority to reverse his previous order. After reversing the order, Judge Hilburn went to Smith's office and told Smith that he had withdrawn the order. Judge Hilburn said Smith told him that his office was not going to prosecute the case. Judge Hilburn told Smith that the Attorney General's Office had expressed a desire to prosecute the case, and that Smith had said, "I don't care." Judge Hilburn subsequently signed and entered an order, entitled "Order to Recuse" which was signed by a Hinds County assistant district attorney.

¶40. Judge Hilburn did exactly what he was required and expected to do by law. Judge Hilburn had a duty to review and consider the "alleged" new evidence that formed the basis for the district attorney's *nolle prosequi* request. Review of this new evidence shows that it merely comprises character evidence as to the decedent's violent nature. By no means can this new evidence be characterized as exoneration evidence. Contrary to the majority's finding(s) otherwise, Judge Hilburn did provide a valid reason for rescinding the order. Implicit in his decision to rescind the order was a public-interest determination, which, again, Judge Hilburn had a legal duty to consider.

¶41. As Judge Hilburn correctly explained at the hearing in this matter, the circuit court, as a court of record, has inherent control of "all judgments, decrees, or orders of the court

22

during the term at which they are rendered"; accordingly, the circuit court has full power to set aside or modify any judgment, decree, or order so rendered during that term of court. *Mutual Health & Benefit Ass'n v. Cranford*, 173 Miss. 152, 156 So. 876, 877 (1924). While there is no Mississippi case on point, several other jurisdictions have dealt with the issue of a trial court's authority to rescind a previously approved *nolle prosequi* order. In *People v. Watson*, 394 Ill. 177, 68 N.E.2d 265 (1946), the Illinois Supreme Court reasoned that:

> Courts of general jurisdiction have inherent authority, during the term, to vacate any judgment or order that may have been made at that term. This was the rule at common law and prevails in most jurisdictions. Considering then that a court has the inherent power to set aside judgments and orders made during the term, can any sound argument be advanced why a court has not the power to set aside a dismissal of an indictment or information and reinstate the case during the term at which the dismissal was entered? The general rule is that a *nolle prosequi* or a dismissal of a criminal charge, if made prior to the time a jury is impaneled and sworn, is not a bar to a subsequent prosecution for the same offense. There is no difference, so far as the defendant's rights are concerned, whether, after the dismissal of a charge, a new information or indictment is filed or the order of dismissal set aside and defendant tried on the old information or indictment. An order of dismissal or a *nolle prosequi* in a criminal case may be set aside during the term at which the order is made.

*Id*. at 181, 68 N.E.2d 265. Similar reasoning has been employed in other jurisdictions, including the Ninth Circuit Court of Appeals, Georgia, Missouri, Pennsylvania, and Arizona. *United States v. Emens*, 565 F.2d 1142, 1144-45 (9th Cir.1977) (dismissal of indictment); *Buice v. State*, 239 Ga. App. 52, 520 S.E.2d 258 262 (1999); *State v. Montgomery*, 276 S.W.2d 166, 167-68 (Mo. 1955); *Commonwealth v. Ashe*, 138 Pa. Super. 222, 227-28, 11 A.2d 173 (1940); *Condos v. Superior Court for Maricopa County*, 29 Ariz. 186, 190-91, 239 P. 1032 (1925) (dismissal of action).

¶42.    Given Mississippi precedent adhering to the common-law rule that "all judgments, decrees or [court orders], however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record and may then be set aside, vacated, modified, or annulled by that court"),[5][6] I find that Judge Hilburn indeed had the authority to rescind the previously approved *nolle prosequi* order based on the reasons Judge Hilburn stated for the record, first, at Williams's motion-to-dismiss hearing (over which Judge Hilburn presided) and then at the hearing before Judge Weill.

¶43.    After Judge Hilburn rescinded the *nolle prosequi* order, Smith informed Judge Hilburn that his office would not prosecute the matter.   At that point, Smith became "absent" for purposes of Mississippi Code Section 25-31-21, which contemplates such a circumstance. Judge Hilburn then acted accordingly to law.

---

[5] *Cranford*, 156 So. at 877 (quoting *Bronson v. Schulten*, 104 U.S. 410, 26 L. Ed. 797 (1881)).  The *Cranford Court* also cited *McRaven v. McGuire*, 17 Miss. 34 (1847), in which it was recognized that the same principle applies to decisions rendered by the Mississippi Supreme Court.  In *McRaven*, it was said: "During the term the judgments of that term are always under control of the court; of course the opinions of each or either of the [justices], may be recalled, and changed, if he becomes satisfied of error." *McRaven*, 17 Miss. 34.

[6] *See also* *Robinson v. State*, 585 So. 2d 757, 758 (Miss. 1991)(rejecting claim that a second sentence entered by the trial court was invalid because original sentence was a final judgment.)  Citing *Jones v. Index Drilling Co.*, 251 Miss. 578, 170 So. 2d 564 (1965), and *Bronson*, 104 U.S. 410, the *Robinson* Court reiterated the general rule that all judgments or other court orders "may be set aside, vacated, modified or annulled" by that court during the term at which they are rendered.  *Robinson*, 585 So. 2d at 758.

24

¶44. For these reasons, I dissent. I would reverse Judge Weill's order dismissing cause number 03-0-969, and reinstate and affirm Judge Hilburn's order transferring the matter to the Attorney General's Office.

**WALLER, C.J., AND RANDOLPH, P.J., JOIN THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART.**

**COLEMAN, JUSTICE, DISSENTING:**

¶45. I do not agree with the majority's position that the Constitution does not authorize the Attorney General to prosecute the instant case. (Maj. Op. ¶ 11). Thus, respectfully, I dissent.

¶46. I agree with the result reached by Justice Pierce and I join his dissent in part and in result. However, in my opinion, the Attorney General's authority to intervene comes from the Constitution and common law, not from statutes. Article 6, Section 173 of the Mississippi Constitution created the Office of Attorney General. The Constitution did not define the Attorney General's duties, but the Court has held that the Attorney General has the same powers and duties that were vested in him at common law. *See* ***State ex rel. Patterson v. Warren***, 254 Miss. 293, 180 So. 2d 293, 299 (1965); ***Kennington-Saenger Theatres v. State ex rel. Dist. Attorney***, 196 Miss. 841, 18 So. 2d 483, 486 (1944). *See also* Miss. Code Ann. § 7-5-1 (Rev. 2014) (the Attorney General is "the chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state" and the Attorney General has the same powers as at common law). The Court has said the following about the Attorney General's duties at common law:

> At common law the duties of the attorney general, as chief law officer of a realm, were numerous and varied. He was chief legal adviser of the crown, *was entrusted with the management of all legal affairs, and prosecution of all suits, criminal and civil, in which the crown was interested*. He had authority

25

to institute proceedings to abate public nuisances, affecting public safety and convenience [sic], to control and manage all litigation on behalf of the state, and to intervene in all actions which were of concern to the general public.

*Warren*, 180 So. 2d at 299 (emphasis added). The Court has held that the Attorney General's power and authority "includes the right to institute, conduct[,] and maintain all suits necessary for the enforcement of the laws of the state, preservation of order and *the protection of public rights*." **State ex rel. Allain v. Miss. Pub. Serv. Comm'n**, 418 So. 2d 779, 781 (Miss. 1982) (quoting **Gandy v. Reserve Life Ins. Co.**, 279 So. 2d 648, 649 (Miss. 1973)). Thus, in my opinion, the Attorney General has the power, through the Constitution and common law, to initiate or intervene should he so chose.

**WALLER, C.J., RANDOLPH, P.J., AND PIERCE, J., JOIN THIS OPINION.**